89 F.3d 1501
 UNITED STATES of America, Plaintiff-Appellee,
v.
Larry FRAZIER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darence Eugene HUTCHINSON, Kenya Brown, Albert Lintez Brown,
a/k/a "Pee Pee" a/k/a "James", Henry Graham,
Raymond D. Griffin, Kenyatta Brown,
Defendants-Appellants.
 Nos. 93-3480, 93-3565.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 2, 1996.
 
 H. Manuel Hernandez, Longwood, FL, for Frazier.
 Paul J. Byron, Asst. U.S. Attys., Tamra Phipps, Tampa, FL, for Appellee in No. 93-3480.
 James T. Skuthan, Asst. Federal Public Defender, Orlando, FL, for Hutchinson.
 Brian J. Gillis, Longwood, FL, for K. Brown.
 Christopher L. Smith, Winter Springs, FL, for A. Brown.
 Dean F. Mosley, Orlando, FL, for H. Graham.
 Michael W. Nielsen, Dowdy & Nielsen, Winter Springs, FL, for Kenyatta Brown.
 Rosemary T. Cakmis, Federal Public Defender, Orlando, FL, for R. Griffin.
 Paul G. Byron, Asst. U.S. Atty., U.S. Attorney's Office, Orlando, FL, for Appellee in No. 93-3565.
 Appeals from the United States District Court for the Middle District of Florida.
 Before HATCHETT and BIRCH, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 Appellants Darence Hutchinson, Henry Graham, Raymond Griffin, Albert Brown, Kenyatta Brown, and Kenya Brown were acquitted of a drug conspiracy charge but convicted of numerous substantive narcotics and firearms violations. Appellant Larry Frazier pleaded guilty to conspiracy to possess with the intent to distribute cocaine base and two substantive drug offenses. We (1) vacate the 21 U.S.C. § 841 convictions of Hutchinson, Griffin, Albert Brown, Kenyatta Brown, and Kenya Brown on double jeopardy grounds and remand for resentencing under 21 U.S.C. § 860; (2) affirm the district court's holding that Hutchinson's prior conviction under Florida Statutes § 817.563 constitutes a predicate controlled substance offense for career offender sentencing purposes; and (3) vacate the district court's findings as to the quantity of drugs attributable to Hutchinson, Albert Brown, and Kenyatta Brown for sentencing purposes and remand for further factual findings on that issue. We find no merit to the appellants' remaining claims of error.[1]
 
 FACTS
 
 2
 In December 1992, the Titusville Police Department and the Bureau of Alcohol, Tobacco, and Firearms (BATF) began investigating drug trafficking activities at the Forrest Villas Apartments. The investigation concentrated on four adjacent apartments, numbers 1912, 1910, 1908, and 1906, and another apartment, number 1852-2A. The apartments were located approximately 300 feet from an elementary school. The police and BATF agents conducted visual and videotape surveillance of the apartments and used audiotape recordings of undercover transactions to identify individuals selling drugs and possessing weapons. BATF agents conducted undercover operations at the apartment complex in January and February 1993, and continued periodic visual surveillance until they executed search warrants in April 1993.
 
 
 3
 Agents determined that (1) Hutchinson occupied apartment 1912 with a codefendant; (2) Graham, Kenyatta Brown, and a codefendant occupied apartment 1910; (3) Griffin occupied apartment 1908; and (4) Albert Brown and Hanley occupied apartment 1852-2A. Kenya Brown did not reside at Forrest Villas although he frequented the complex. Several unindicted individuals used apartment 1906. During the surveillance, the appellants and their codefendants commonly entered one another's apartments.
 
 
 4
 A resident of Forrest Villas, Mitch Sohm, worked as a confidential informant and purchased cocaine and weapons from the appellants. Sohm purchased cocaine base from Hutchinson, Graham, Griffin, and Albert Brown. He also purchased an illegal shotgun from Albert Brown and Hanley. After Sohm made these transactions, he introduced the appellants to undercover BATF Special Agent Stephen Martin. Martin subsequently negotiated to purchase cocaine base from Kenya Brown, and purchased the drug from Hutchinson, Graham, Griffin, Albert Brown, and Kenyatta Brown. Martin also negotiated to purchase weapons from Kenya Brown and purchased weapons from Hutchinson, Griffin, Albert Brown, and Kenyatta Brown.
 
 PROCEDURAL HISTORY
 
 5
 In April 1993, a grand jury in the Middle District of Florida returned a twenty-four count indictment against all the appellants except Frazier. In June 1993, the grand jury returned a forty-seven count superseding indictment that included Frazier. Count 1 of the superseding indictment charged all of the appellants (and six codefendants) with conspiring to possess with the intent to distribute cocaine base in violation of 21 U.S.C. § 846. The appellants were also named in numerous substantive counts.
 
 
 6
 In September 1993, Frazier pleaded guilty to all counts against him. On September 29, 1993, a jury returned verdicts acquitting the other appellants of the conspiracy count. As to the substantive counts, the jury (1) acquitted Hutchinson on three counts and convicted him on fourteen (Counts 2, 4-15, 38); (2) acquitted Graham on two counts and convicted him on eight (Counts 16-23); (3) convicted Griffin on all four counts against him (Counts 12, 13, 25, 26); (4) convicted Albert Brown on all nine counts against him (Counts 27-35); (5) convicted Kenyatta Brown on both counts against him (Counts 34, 35); and (6) acquitted Kenya Brown on two counts and convicted him on two (Counts 36, 37). The district court sentenced Frazier in November 1993, and the remaining appellants in December 1993.
 
 ISSUES
 
 7
 The issues we discuss are: (1) whether Hutchinson, Griffin, Albert Brown, Kenyatta Brown, and Kenya Brown received multiple punishments for the same offense conduct in violation of the Fifth Amendment's Double Jeopardy Clause; (2) whether the district court properly relied on a prior state conviction in sentencing Hutchinson as a career offender pursuant to Sentencing Guidelines sections 4B1.1 and 4B1.2; and (3) whether the district court erred in calculating the drug quantities attributable to Hutchinson, Albert Brown, and Kenyatta Brown.
 
 DISCUSSION
 A. Double Jeopardy
 
 8
 With the exception of Graham and Frazier, all the appellants contend that they received multiple punishments for the same conduct in violation of the Fifth Amendment's Double Jeopardy Clause. Specifically, they argue that they were impermissibly convicted of two crimes, possession with the intent to distribute cocaine base under 21 U.S.C. § 841(a) and possession with the intent to distribute cocaine base within 1,000 feet of an elementary school under 21 U.S.C. § 860, for the same offense conduct.
 
 
 9
 In United States v. Freyre-Lazaro, 3 F.3d 1496, 1507 (11th Cir.1993), cert. denied, U.S. ----, 114 S.Ct. 1385, 128 L.Ed.2d 59 (1994), this court held that "a § 841(a) violation is a lesser included offense of § 860," and, consequently, "s 841(a) and ... § 860 constitute the same offense for double jeopardy purposes." Accordingly, we vacate the section 841 convictions of Hutchinson, Griffin, Albert Brown, Kenyatta Brown, and Kenya Brown and remand for resentencing under section 860. Freyre-Lazaro, 3 F.3d at 1507.
 
 B. Career Offender Status
 
 10
 Hutchinson argues that the district court erroneously sentenced him as a career offender under Sentencing Guidelines sections 4B1.1 and 4B1.2. "This court applies the de novo standard of review when interpreting questions of law arising under the Sentencing Guidelines." United States v. Smith, 54 F.3d 690, 691 (11th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 329, 133 L.Ed.2d 229 (1995).
 
 
 11
 Section 4B1.1 of the guidelines classifies a defendant as a career offender if
 
 
 12
 (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.
 
 
 13
 U.S.S.G. § 4B1.1 (1993).[2] Hutchinson admits that the first and second criteria apply to him, and he concedes that his 1986 robbery conviction constitutes a predicate offense under section 4B1.1. Hutchinson argues, however, that the district court erred in counting his prior Florida felony conviction for selling a substance in lieu of a controlled substance as a predicate "controlled substance offense" under section 4B1.1.
 
 
 14
 Section 4B1.2(2) of the guidelines defines the term "controlled substance offense" as "an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(2) (1993). The commentary to section 4B1.2 states that the term "controlled substance offense" includes "the offenses of aiding and abetting, conspiring, and attempting to commit" such an offense. U.S.S.G. § 4B1.2, comment. (n. 1) (1993). It is the practice of this circuit to "look at the elements of the convicted offense, not the conduct underlying the conviction, in determining if a prior conviction is a controlled substance offense under § 4B1.2(2)." United States v. Lipsey, 40 F.3d 1200, 1201 (11th Cir.1994).
 
 
 15
 In 1990, Hutchinson pleaded nolo contendere to a violation of Florida Statutes § 817.563. That law reads, in relevant part:
 
 
 16
 Controlled substance named or described in s. 893.03; sale of substance in lieu thereof
 
 
 17
 It is unlawful for any person to agree, consent, or in any manner offer to unlawfully sell to any person a controlled substance named or described in s. 893.03 and then sell to such person any other substance in lieu of such controlled substance.
 
 
 18
 Fla.Stat.Ann. § 817.563 (West 1994) (emphasis added).[3] Looking at the elements of the convicted offense, we conclude that the district court properly held that Hutchinson's conviction under Florida Statutes § 817.563 constitutes a predicate "controlled substance offense" for career offender sentencing purposes. See United States v. Hester, 917 F.2d 1083, 1084 (8th Cir.1990) (counting defendant's California conviction for selling a counterfeit controlled substance as a predicate offense under section 4B1.1). Consequently, we affirm the district court's sentencing of Hutchinson as a career offender.
 
 C. Drug Quantity Determinations
 
 19
 Hutchinson, Albert Brown, and Kenyatta Brown challenge the sufficiency of the evidence supporting the district court's determinations concerning the drug quantities attributable to them for sentencing purposes. "We review the district court's determination as to the quantity of drugs attributable to a defendant under the clearly erroneous standard." United States v. Beasley, 2 F.3d 1551, 1561 (11th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 2751, 129 L.Ed.2d 869 (1994).
 
 
 20
 "Calculating the base offense level for drug distribution requires a determination of the quantity of illegal drugs properly attributable to a defendant." United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir.1995). "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1, comment. (n. 12) (1993). In estimating the quantity of drugs attributable to a defendant, a court may base its computation on evidence showing the average frequency and amount of a defendant's drug sales over a given period of time. See, e.g., United States v. Green, 40 F.3d 1167, 1175 (11th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1809, 131 L.Ed.2d 733 and --- U.S. ----, 115 S.Ct. 2262, 132 L.Ed.2d 268 (1995); United States v. Robinson, 935 F.2d 201, 205 (11th Cir.1991), cert. denied, 502 U.S. 1037, 112 S.Ct. 885, 116 L.Ed.2d 789 (1992). The government must establish the amount attributable to each defendant by a preponderance of the evidence. Butler, 41 F.3d at 1444. As such, "[a]cquitted conduct may be considered by a sentencing court because a verdict of acquittal demonstrates a lack of proof sufficient to meet a beyond-a-reasonable-doubt standard--a standard of proof higher than that required for consideration of relevant conduct at sentencing." United States v. Averi, 922 F.2d 765, 766 (11th Cir.1991).
 
 1. Hutchinson
 
 21
 In judging Hutchinson guilty of Counts 8-15, the jury found him responsible for distributing 14.7 grams of cocaine base. In calculating Hutchinson's base offense level under the guidelines, however, the district court held him responsible for distributing between thirty-five and fifty grams of the narcotic.
 
 
 22
 The district court relied on the testimony of Hanley in determining the quantity of cocaine base that Hutchinson distributed. Hanley testified that after he moved back to Forrest Villas in December 1992, he observed Hutchinson selling cocaine on a daily basis. Hanley stated that Hutchinson "had more customers than anybody else" at the apartment complex. Hanley also testified that Hutchinson once told him that he had made $1,500 the previous evening. On cross-examination, however, Hanley conceded, "I don't know how he made it. He just told me he made $1,500." Hanley further testified that he and Hutchinson once traveled to Cocoa, Florida, to purchase contraband; Hanley stated that he purchased one-sixteenth of an ounce of cocaine base and that he believed Hutchinson had purchased a "half-ounce" of the drug. Based largely on this testimony, the district court held Hutchinson responsible for distributing "a gram [of cocaine base] a day for the eight-week period" from December 1992 to February 1993.
 
 
 23
 We believe the district court clearly erred in holding Hutchinson responsible for distributing between thirty-five and fifty grams of cocaine base. Hanley's testimony provided an insufficient basis for the district court to estimate, with any degree of specificity, the quantity of drugs that Hutchinson sold. Hanley's statements that Hutchinson sold cocaine base "every day," had "more customers than anybody else out there," and earned $1,500 in one night only establish that Hutchinson sold an undetermined amount of cocaine base at the apartment complex. The court made no findings, and the record reveals no evidence, regarding the number of drug transactions Hutchinson engaged in during the period at issue or the amount of cocaine base involved per transaction. Such evidence constitutes a "vital prerequisite" to the method the district court used to sentence Hutchinson, and its absence compels us to direct the district court to make further factual findings on remand for resentencing. Butler, 41 F.3d at 1447-48; see also Lawrence, 47 F.3d at 1568.2. Albert Brown
 
 
 24
 Albert Brown was convicted for distributing 9.7 grams of cocaine base; the district court, however, held Brown accountable for distributing between 50 and 150 grams of the drug.
 
 
 25
 In making its sentencing determinations as to Brown, the district court relied on the testimony of Hanley. Hanley testified that Albert Brown sold cocaine base two or three days per week during the summer of 1992, and every day starting in December 1992. He stated that he saw Brown with "a quarter, maybe a 16th" of an ounce of cocaine base three or four times before December. Starting in December, roommates Brown and Hanley would "buy dope together" two or three times per week. On those occasions, "[s]ometimes we'd buy, he'd spend a hundred, I'd spend a hundred. Sometimes less, sometimes more." Hanley testified that starting in December he was selling approximately one-sixteenth of an ounce of cocaine base every day or every other day. He believed that "Albert Brown sold more than me because I used to see him with more money than I had and stuff, so he had to sell more than I do." Moreover, Hanley testified that Brown sold to more customers than he did. When asked, however, if Brown informed him about how much he made from cocaine sales, Hanley responded, "He didn't tell me right off the top how much he was making every day; but, you know, I seen him making money. I couldn't just, I couldn't tell you an approximate figure."
 
 
 26
 Based on the above testimony, the district court determined that during an eight-week period from December 1992 to February 1993, Brown sold one gram of cocaine base per day. We hold, however, that Hanley's testimony provided an inadequate evidentiary basis for the district court to calculate, with any reasonable degree of specificity, the amount of contraband that Brown distributed. The district court's lack of specific, express findings concerning the frequency and volume of Brown's drug sales reinforces our conclusion. Therefore, we vacate this portion of Brown's sentence and remand for further factual findings. See Butler, 41 F.3d at 1447-48; Lawrence, 47 F.3d at 1568.
 
 3. Kenyatta Brown
 
 27
 Kenyatta Brown asserts that the jury found him guilty of distributing four grams of cocaine base, and the district court clearly erred in holding him accountable for distributing thirty-seven grams of the drug.
 
 
 28
 Hanley testified that he saw Kenyatta Brown making cocaine sales in March and May of 1992. Hanley also testified that he sold cocaine base two or three days per week during the summer of 1992, and "every day I was out there, [Kenyatta Brown] was out there." Hanley believed that Brown sold to more people than he did during this period. Hanley also stated that from December 1992 to February 1993, Brown's customer base "was more than mine because he was out there longer than I was." Hanley also stated that he made drug sales with Brown on "probably" more than three occasions.
 
 
 29
 Based largely on the testimony outlined above, the district court made the following drug attribution calculation:
 
 
 30
 I'm going to score Mr. Kenyatta Brown at a level 30. It would seem to me that taking half of what I think the evidence by preponderance has shown that is in the summer a gram, two times a week times six weeks would be 12. So take half of that would be six; winter a gram, for eight weeks times seven days a week would be 56. Take half of that is 28. Add that together, that's 34. And with the amounts that were actually sold on one day, I'll add three, and that puts him over to a level 30, criminal history category 1.
 
 
 31
 We cannot sustain the district court's holding. The district court did not make specific findings concerning the number of drug transactions Brown engaged in during the periods at issue or the amount of contraband involved in those transactions, and the record is devoid of such evidence. Accordingly, we vacate this portion of Kenyatta Brown's sentence also and remand for further factual findings. See Butler, 41 F.3d at 1447-48; Lawrence, 47 F.3d at 1568.[4]CONCLUSION
 
 
 32
 For the foregoing reasons, we affirm Graham's and Frazier's convictions and sentences. We vacate, however, the 21 U.S.C. § 841 convictions of Hutchinson, Griffin, Albert Brown, Kenyatta Brown, and Kenya Brown and remand to the district court for further proceedings consistent with this opinion.
 
 
 33
 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 
 
 34
 GODBOLD, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 35
 I concur in Judge Hatchett's opinion in all respects except Part B, which concerns the sentencing of defendant Hutchinson as a career offender under U.S.S.G. § 4B1.1 and § 4B1.2(2). Those sections classify a defendant as a career offender if he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." (emphasis added)
 
 
 36
 In sentencing Hutchinson as a career offender the court counted a 1990 Florida felony conviction as a predicate "controlled substance offense" under U.S.S.G. § 4B1.1. In the Florida case Hutchinson had pleaded nolo contendere to a violation of Florida statute § 817.563, which appears in Chapter 817 of the Florida Statutes Annotated titled "Fraudulent Practices," in Part I, thereof, titled "False Practices and Frauds, Generally."
 
 
 37
 Sec. 817.563. Controlled substance named or described in s. 893.03; sale of substance in lieu thereof
 
 
 38
 It is unlawful for any person to agree, consent, or in any manner offer to unlawfully sell to any person a controlled substance named or described in s. 893.03 and then sell to such person any other substance in lieu of such controlled substance.
 
 
 39
 Hutchinson's offense was selling an unmarked piece of wax to an undercover agent "in lieu of" cocaine. It was scored under Florida's guidelines as a fraud case.
 
 
 40
 What do the guidelines mean by a "controlled substance offense?" We look to U.S.S.G. § 4B1.2(2). It defines controlled substance offense as:
 
 
 41
 --an offense under a federal or state law
 
 
 42
 --that prohibits manufacture, importation, exportation, distribution, or dispensing
 
 
 43
 --of a controlled substance (or counterfeit substance )
 
 
 44
 --or possession of a controlled substance (or a counterfeit substance ) with intent to manufacture, import, export, distribute, or dispense. (emphasis added)
 
 
 45
 There are two possible interpretations of this court's opinion:
 
 
 46
 (1) That defendant's Florida conviction was a "controlled substance offense" because it was for the sale of a "counterfeit substance." The opinion refers to U.S. v. Hester, 917 F.2d 1083, 1084 (8th Cir.1990), which is a counterfeit substance case. However, if this court intends to stand on the "counterfeit substance" prong of § 4B1.2(2), that prong does not fit. Both the federal statute, 21 U.S.C. § 802(7), and Florida's parallel statute, Fl.Stat.Ann. § 831.31(2) (West 1989), define "counterfeit substance" as a controlled substance that is mislabeled so as to misidentify the manufacturer, distributor or dispenser. Hutchinson's Florida conviction did not involve either a controlled substance or mislabeling.
 
 
 47
 Section 831.3(2) is Florida's counterfeit controlled substance statute. At the time of defendant's conviction it read, in relevant part:
 
 TITLE XLVI. CRIMES
 CHAPTER 831. FORGERY AND COUNTERFEITING
 
 48
 831.31. Counterfeit controlled substance; sale, manufacture, delivery, or possession with intent to sell, manufacture, or deliver
 
 
 49
 (1) It is unlawful for any person to sell, manufacture, or deliver, or to possess with intent to sell, manufacture, or deliver, a counterfeit controlled substance.
 
 
 50
 * * * * * *
 
 
 51
 (2) For purposes of this section, "counterfeit controlled substance" means:
 
 
 52
 (a) A controlled substance named or described in s. 893.03 which, or the container or labeling of which, without authorization bears the trademark, trade name, or other identifying mark, imprint, or number, or any likeness thereof, of a manufacturer other than the person who in fact manufactured the controlled substance; or
 
 
 53
 (b) Any substance which is falsely identified by its container or labeling as a controlled substance named or described in s. 893.03.
 
 
 54
 Fla.Stat.Ann. § 831.31(1), (2) (West 1989) (emphasis added). This appears in the Forgery and Counterfeiting chapter of the Code. It is apparent that in 1990 this was a mislabeling statute. The Florida cases treat it as directed at counterfeiting, not at controlled substances. See Durr v. State, 583 So.2d 424 (Fla.Dist.Ct.App.1991) (no violation of § 831.31 when officers found a "clear Ziploc sandwich bag containing 12 rocks of what appeared to be cocaine, but was not"); Adderly v. State, 571 So.2d 557 (Fla.Dist.Ct.App.1990), (reversing a conviction under the "counterfeit controlled substance" statute when the defendant possessed a "nondescript, unmarked, and unlabeled bag containing eight rocks of fake cocaine"); Twinn v. State, 442 So.2d 286, 287 (Fla.Dist.Ct.App.1983) (reversing defendant's conviction under § 831.31 when he was arrested with "seven clear plastic bags containing a white powder, which later proved not to be cocaine or any other controlled substance").
 
 
 55
 (2) Alternatively, this court may mean that the Florida conviction, though not a "counterfeit substance" offense, is a "controlled substance offense." And it appears to reach that conclusion by "looking at the elements of the convicted offense," as we must do according to U.S. v. Lipsey, 40 F.3d 1200, 1201 (11th Cir.1994). Florida's § 817.563 does make it unlawful to offer to sell a controlled substance and then sell some other substance "in lieu of such controlled substance." But the elements of a conviction under § 817.563 do not support the "look at the elements" approach. The elements of this section are two: an offer to sell a controlled substance followed by a sale of another substance in lieu thereof. Both elements must be met--they are conjunctive, not disjunctive. The offer to sell element was met in Hutchinson's case. But neither law nor logic permits us to conclude that the second element, "in lieu of," when met, caused Hutchinson's overall conduct to be a "controlled substance offense." The second element meets none of the criteria of § 4B1.2(2)--it is not manufacture, importation, exportation, distribution, or dispensing of a controlled substance. The subject matter is not a controlled substance.
 
 
 56
 The reasoning of this court is circular, i.e., it necessarily examines whether a benign substance sold in lieu of a controlled substance is itself a controlled substance, and it concludes that it is a controlled substance because it is sold in lieu of a controlled substance. One cannot make a silk purse out of a sow's ear by calling it such. It is anomalous indeed that this court, by a process of reasoning that requires analysis of the Florida statute, treats that statute as a drug (controlled substance) offense statute when Florida codified it and in sentencing implemented it as a fraud/false pretense statute.
 
 
 57
 Moreover, the government has not even suggested that the "examining the elements" approach is available to sustain the district court's ruling. Rather it relies on the "counterfeit substance" prong of § 4B1.2(2), which, as pointed out above, does not fit. In this connection the government cites, as does the opinion of this court, U.S. v. Hester, 917 F.2d 1083 (8th Cir.1990). That case dealt with whether a controlled substance offense was a felony, not whether it was a controlled substance offense at all. Hester was convicted of selling a counterfeit controlled substance under a California statute that broadly defined such a substance. Unlike Hester's offense, Hutchinson's offense was not a counterfeit controlled substance offense under Florida law.
 
 
 58
 Alternatively, the government relies on a 1992 amendment to the Florida controlled substance law. Fl.Stat.Ann. § 831.31(2) (West 1994). The amendment broadened Florida's definition of a counterfeit controlled substance to include a substance falsely identified as a controlled substance. That amendment was not in effect at the time of Hutchinson's Florida conviction.
 
 
 59
 Summarizing, in the end this court, acting eviscerally, has either identified as a "counterfeit substance" material that was not defined as counterfeit by state law--statutory and decisional--and was not made counterfeit until the Florida statute was subsequently amended. Or, by "looking at the elements" of a Florida offense it has identified as a "controlled substance offense" conduct embracing an element that under state law was not a controlled substance element. We can do better than this.
 
 
 60
 I respectfully dissent from the affirmance of Hutchinson's career offender sentence.
 
 
 
 [1]
 Griffin, Kenyatta Brown, and Kenya Brown claim that the evidence was insufficient to support their convictions; Griffin also argues that the district court abused its discretion in denying his motion for severance, that the prosecutor's comments during rebuttal closing argument denied him a fair trial, and that the district court violated his due process rights by relying on the testimony of codefendant Keith Hanley, a drug abuser, at the sentencing hearing; Hutchinson insists that the district court violated Sentencing Guidelines section 6A1.3, p.s. in relying on Hanley's testimony; Hutchinson, Graham, and Albert Brown assert that the district court erred in denying them sentence reductions for acceptance of responsibility; and Frazier contends that the Sentencing Guidelines create a discriminatory sentencing scheme in violation of the Due Process Clause, Equal Protection Clause, rule of lenity, and prohibition against bills of attainder. We reject these claims without further discussion. See 11th Cir.R. 36-1. We do not consider Frazier's claim of ineffective assistance of counsel in this direct appeal. "An ineffective assistance of counsel claim is properly raised in a collateral attack on the conviction under 28 U.S.C. § 2255...." United States v. Butler, 41 F.3d 1435, 1437 n. 1 (11th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 1987, 131 L.Ed.2d 874 (1995)
 
 
 [2]
 As a general rule, "a sentencing court should apply the guidelines in effect at the time of sentencing." United States v. Aduwo, 64 F.3d 626, 628 n. 1 (11th Cir.1995)
 
 
 [3]
 Florida Statutes § 893.03 sets forth the state's standards and schedules concerning controlled substances. See Fla.Stat.Ann. § 893.03 (West 1994)
 
 
 [4]
 Of course, "[i]n remanding, we express no opinion regarding whether the quantity of cocaine base the [district court believed] was properly attributable to each appellant may ultimately be proven correct." Lawrence, 47 F.3d at 1569