United States Court of Appeals
Fifth Circuit

**F I L E D**

June 1, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No.  02-41339

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**DARRELL KEITH CRITTENDEN,**

**Defendant-Appellant.**

**Appeal from the United States District Court
for the Southern District of Texas**

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges

RHESA HAWKINS BARKSDALE, Circuit Judge:

Darrell Keith Crittenden, who pleaded guilty in March 2002 to knowingly and intentionally possessing an illegal drug, with intent to distribute, appeals his sentence, primarily challenging being classified as a career offender under Sentencing Guidelines § 4B1.1.  For that classification, at issue is whether Crittenden's previous Texas conviction for delivery of a *simulated* controlled substance qualifies under § 4B1.1 as one of the requisite two controlled substance offenses.  **AFFIRMED.**

I.

After Crittenden was arrested in Texas, in February 2002, cocaine was found in his vehicle.  Crittenden pleaded guilty to possession, with intent to distribute, 77 grams of cocaine base, a

Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

Previously, Crittenden had been convicted for two offenses under Texas law: delivery of a *simulated* controlled substance in 1994; and delivery of a *controlled* substance in 1996. Based on these prior convictions, the district court found (over Crittenden's objection) that Crittenden was a career offender under the Guidelines, resulting in a substantial increase in his sentence. He was sentenced, *inter alia*, to 210 months' imprisonment.

## II.

Crittenden presents two challenges to his sentence. First, claiming that his previous conviction for delivery of a *simulated* controlled substance is *not* a controlled substance offense under the Guidelines, he contests being classified as a career offender. Second, claiming a conflict between the judgment and oral sentence pronouncement, he maintains his sentence must be reformed to conform to the latter.

## A.

Application of the Guidelines is reviewed *de novo*. *E.g., United States v. Booker*, 334 F.3d 406, 412 (5th Cir. 2003). They provide for career offender status

> if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that

2

> is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence *or a controlled substance offense*.

U.S.S.G. § 4B1.1 (2001) (emphasis added). The only factor at issue is whether the 1994 Texas conviction for delivery of a *simulated* controlled substance is a Guidelines controlled substance offense.

Guidelines § 4B1.2 defines such an offense as one

> *under federal or state law*, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (*or counterfeit substance*) or the possession of a controlled substance (or *counterfeit substance*) with intent to manufacture, import, export, distribute, or dispense.

*Id*. § 4B1.2(b) (emphasis added). The Guidelines, however, do *not* define "counterfeit substance" as used in § 4B1.2. The Government contends that a *simulated* controlled substance offense is a *counterfeit* controlled substance offense for Guidelines' purposes. Whether one offense equates with the other is a question of first impression in our circuit. (Our court addressed this issue in an unpublished opinion, **United States v. Franklin**, No. 97-40160 (5th Cir. 18 Aug. 1997); there, however, the Government conceded that the simulated controlled substance offense was *not* a controlled substance offense.)

With little analysis, two other circuits (Eighth and Eleventh) have addressed this issue. In **United States v. Frazier**, 89 F.3d

3

1501, 1505 (11th Cir. 1996), a split panel held a Florida statute prohibiting "any person to ... in any manner offer to unlawfully sell to any person a controlled substance ... and then sell to such person any other substance in lieu of such controlled substance" was a controlled substance offense under Guidelines § 4B1.1. *See also* **United States v. Evans**, 358 F.3d 1311 (11th Cir. 2004) (citing **Frazier** and holding a conviction involving the delivery of chalk rather than cocaine was a controlled substance offense under §4B1.1). **Frazier** cited **United States v. Hester**, 917 F.2d 1083, 1085 (8th Cir. 1990), where a divided panel held an offense characterized as a misdemeanor under California law was a felony under § 4B1.1 because it was punishable by more than one year's imprisonment. The **Hester** majority appears to have implicitly decided that a conviction under the California statute prohibiting the sale of a substance, in lieu of a controlled substance, was a *counterfeit* controlled substance offense under § 4B1.1. *Id*. at 1084, 1086 (referring to the conviction as one for selling a *counterfeit* controlled substance, whereas the language of the statute (quoted only by the dissent) prohibited sale of a substance in lieu of a controlled substance). More recently, the Eighth Circuit, in *dicta*, noted that the Government had *not* appealed the ruling that sale of a simulated controlled substance (baking soda) was *not* a controlled substance offense under the Guidelines. **United States v. Peters**, 215 F.3d 861, 862 (8th Cir. 2000).

4

"It is well established that our interpretation of the Sentencing Guidelines is subject to the ordinary rules of statutory construction. If the language of the guideline is unambiguous, our inquiry begins and ends with the plain meaning of that language." *United States v. Carbajal*, 290 F.3d 277, 283 (5th Cir. 2002) (citation omitted). *See also United States v. Solis-Campozano*, 312 F.3d 164, 166 (5th Cir. 2002); *United States v. Boudreau*, 250 F.3d 279, 285 (5th Cir. 2001).

For its ordinary, plain meaning, "counterfeit" is defined as "made in imitation of something else with intent to deceive: forged". WEBSTER'S NEW COLLEGIATE DICTIONARY 297 (9th ed. 1991). *See also* BLACK'S LAW DICTIONARY 354 (7th ed. 1999) ("to forge, copy or imitate (something) without a right to do so and with the purpose of deceiving or defrauding"). Essentially, the plain meaning of counterfeit has two components: made in imitation; and intent to deceive.

The Texas law under which Crittenden was convicted defines a simulated controlled substance as one "that is purported to be a controlled substance, but is chemically different from the controlled substance it is purported to be". TEXAS HEALTH & SAFETY CODE ANN. § 482.001(4) (Vernon 2003). For example, under Texas law, flour packed to resemble cocaine is a simulated controlled substance. *E.g., Rodriguez v. State*, 879 S.W.2d 283 (Tex. App. 1997, pet. ref'd).

Therefore, looking to the two components of counterfeit: a substance "purported to be a controlled substance", but which is *not* such a substance, is necessarily "made in imitation of something else"; and a harmless substance would not be purported to be a controlled substance without "inten[ding] to deceive". Accordingly, a Texas conviction for delivery of a simulated controlled substance satisfies both components of the plain meaning of "counterfeit" as used in the Guidelines.

On the other hand, although the Guidelines do not define a counterfeit controlled substance, the Controlled Substance Act, 21 U.S.C. § 801, *et seq.,* defines this term in a far more restricted manner than its plain meaning. For the Controlled Substances Act, a counterfeit substance is

> a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributer, or dispenser.

21 U.S.C. § 802(7).

The Texas simulated controlled substance offense does not require that the purported controlled substance have any identifying marks or otherwise misrepresent its manufacturing origin. As discussed, a Texas simulated controlled substance

6

offense requires only that the substance be in imitation of a controlled substance. Therefore, under the more narrow definition in the federal Controlled Substances Act, the elements for a Texas *simulated* controlled substance offense do not equal those for a *counterfeit* controlled substance offense under the federal Act.

Nor do they equate with those for a "counterfeit substance" under the Texas Controlled Substances Act. There, such a substance is

> a controlled substance that, without authorization, bears or is in a container or has a label that bears an actual or simulated trademark, trade name, or other identifying mark, imprint, number, or device of a manufacturer, distributor, or dispenser other than the person who in fact manufactured, distributed, or dispensed the substance.

TEX. HEALTH & SAFETY CODE ANN. § 481.002(7) (Vernon 2003). This definition of counterfeit substance is substantially similar to that found in the Federal Controlled Substances Act; but, unlike the federal definition, the Texas definition does not require that the counterfeit substance "thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributer, or dispenser". 21 U.S.C. § 802(7).

Along this line, the Guidelines' § 4B1.1 background comments for defining a career offender refer to 28 U.S.C. § 994(h), which requires the Sentencing Commission to mandate near the maximum sentence for those with previous convictions of two or more

7

specific kinds of felonies.  One such felony is "an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841)".  28 U.S.C. § 994(h)(1)(B).  Section 401 prohibits, *inter alia*, distribution of counterfeit controlled substances, 21 U.S.C. § 841(a)(2); therefore, it is arguable that the Controlled Substances Act's definition of counterfeit is applicable to the Guidelines.  On the other hand, as noted, the Guidelines neither define a counterfeit controlled substance offense nor specifically incorporate the definition from the Controlled Substances Act.

The answer is found in those same Guidelines' background comments.  They recognize that the Commission has modified § 994(h)'s definition of career offender in order "to avoid 'unwarranted sentencing disparities among defendants with similar records who have been found guilty of *similar* criminal conduct'". U.S.S.G. § 4B1.1 (background)(emphasis added).  For example, § 994(h)(2)(B), identifying the type of convictions that qualify for the requisite two prior convictions for career offender status, does *not* list convictions under state law; on the other hand, they are so listed in Guidelines § 4B1.1 (incorporating § 4B1.2(b)'s definition of controlled substance offense, quoted *supra* ("offense under federal or *state* law"; emphasis added)).

This reflects the Commission's intent to depart, as need be, from the Controlled Substances Act's definition of controlled substance offense (and, in turn, counterfeit controlled substance),

8

in order to avoid sentencing disparities.  Accordingly, and because Guidelines §§ 4B1.1 and 4B1.2 neither define the term counterfeit, nor cross-reference the Controlled Substances Act for its definition there (and, contrary to the **Dissent** at 4, do not "effectively include []" it), we hold that our rules of statutory interpretation govern.  Therefore, we accord counterfeit its plain meaning — made in imitation of something with intent to deceive.  Providing additional compelling support for applying the plain meaning rule are quite obvious, strong policy reasons for interpreting broadly a counterfeit controlled substance offense to encompass a simulated controlled substance offense.

First, the sale of simulated controlled substances carries with it the same dangers of violence as the sale of a controlled substance, as well as many, if not most, of the numerous other egregious harms flowing from such sales.  *E.g., **Record Head Corp. v. Sachen***, 682 F.2d 672, 680 (7th Cir. 1982) (upholding against challenge on other grounds ordinance prohibiting sale of *simulated* controlled substances because they encourage illegal use of drugs and should be prevented for health and safety of community); ***Fla. Businessmen for Free Enterprise v. City of Hollywood***, 673 F.2d 1213, 1223 (11th Cir. 1982) (upholding ordinance prohibiting sale of *simulated* controlled substances because they contribute to atmosphere of community acceptance of illegal use of controlled substances).  We do not believe that the Guidelines intended to

9

omit this type offense in providing for enhanced sentences for those with multiple drug-related convictions. *See **United States v. Sampson***, 140 F.3d 585, 589 (4th Cir. 1998) (stating that 21 U.S.C. § 841(a)(2), concerning counterfeit controlled substances, "seems to have been designed to prosecute the unauthorized use of controlled substances found in commercial settings such as prescription drugs, not those sold in street deals")  For these reasons, we disagree with the dissent's position that a simulated controlled substance offense is fundamentally different from a counterfeit controlled substance offense.

Second, as discussed *supra*, the Guidelines' definition of controlled substance offense applies to both state *and* federal offenses.  The Texas offense for distribution of a simulated controlled substance may have a different name or elements under another State's law; yet each offense may be similar.  Again, one purpose of the Guidelines is to treat similar offenses similarly.

B.

Crittenden next challenges the special condition in the judgment that requires him to undergo mental health treatment.  He contends:  the oral pronouncement of sentence did not include such treatment; and, therefore, the judgment must be reformed to conform with the oral pronouncement. *E.g., **United States v. Vega***, 324 F.3d 798, 801 (5th Cir. 2003).

10

This claim is simply incorrect; Crittenden misreads the record.  At sentencing, after discussing the special condition that Crittenden attend drug rehabilitation, the district court judge noted:  "We'll also put in a requirement if your Probation Officer feels it would be helpful [that] you'll participate in any type of mental health treatment program".

III.

For the foregoing reasons, the judgment is

*AFFIRMED*.

DENNIS, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's decision that Crittendon's sentence need not be reformed to remove the requirement that he undergo mental health treatment. However, because Crittendon's conviction for delivery of a "simulated controlled substance" offense under Texas law is not a "controlled substance offense" as defined in U.S.S.G. § 4B1.2(b), I respectfully dissent from the majority's affirmance of the district court's enhancement of his sentence under U.S.S.G. § 4B1.1.

Under section 4B1.1 of the Sentencing Guidelines, a person convicted of a "controlled substance offense" who has at least two prior convictions for controlled substance offenses is a "career offender" and must be sentenced accordingly. U.S.S.G. § 4B1.1 (2001). Section 4B1.2(b) of the Guidelines defines the term "controlled substance offense" for career offender status as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of <u>a controlled substance (or a counterfeit substance)</u> or the possession of <u>a controlled substance (or a counterfeit substance)</u> with intent to manufacture, import, export, distribute or dispense.

*Id.* § 4B1.2(b)(emphasis added). The federal Controlled Substance Act in section 802(7) defines "counterfeit substance" as:

> <u>[A] controlled substance</u> which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed,

-12-

> or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

21 U.S.C. § 802(7)(emphasis added). In short, a counterfeit substance is a controlled substance that has been incorrectly labeled so as to misrepresent its manufacturer, distributor, or dispenser. As the majority concedes, this definition of the term "counterfeit substance" excludes Crittendon's Texas state law conviction for delivery of a "simulated controlled substance."

The majority, however, ignores this definition and instead uses a dictionary definition of the term "counterfeit" to find that Crittendon's simulated substance conviction is a "controlled substance offense" under section 4B1.2(b). It claims that the section 802(7) definition is inapplicable because it would result in sentencing disparities among defendants with similar records.

However, because the section 802(7) definition of the term "counterfeit substance" has been effectively incorporated into the Guidelines, we are bound by this definition. Further, even if it were not expressly incorporated, we are still required to use this definition because the term "counterfeit substance" is a well-established term of art within the realm of controlled substance offenses. Finally, the majority's concern about treating similar offenses differently is unwarranted in these circumstances; "simulated controlled substance" offenses are different from controlled and counterfeit substance offenses because, unlike those

-13-

offenses, "simulated controlled substance" offenses do not involve controlled substances and are not illegal under federal law.

Although we generally apply the plain meaning of a term when interpreting a statute, "[w]ords may have different meanings when used in the context of a special subject, than they have in general usage." 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 47.27, at 335 (6th ed. 2000). This is particularly so when the term is defined within a statutory scheme. *See Stenberg v. Carhart*, 530 U.S. 914, 942 (2000)("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."). Further, when context dictates that a term has a particular definition, that definition will apply instead of the plain meaning of the term. *See A. Magnano Co. v. Hamilton*, 292 U.S. 40, 46-47 (1934)(providing that the words of an Act "are to be given their ordinary meaning unless the context shows that they are differently used").

The section 802(7) definition of "counterfeit substance" refers only to controlled substances that misidentify the manufacturer, distributor, or dispenser of the controlled substance. There is no dispute that this definition does not criminalize a person's possession of a noncontrolled substance that he represents to be a controlled substance. As the majority explains, this definition has been incorporated into the Sentencing Guidelines. The Background Commentary to section 4B1.1 references

-14-

28 U.S.C. § 994(h), which provides for sentencing enhancements for persons convicted of counterfeit substance offenses under 21 U.S.C. § 841(a)(2). Section 841(a)(2) criminalizes counterfeit substance offenses based on section 802(7)'s definition of the term "counterfeit substance." By referencing section 994(h), the Commission effectively included the section 802(7) definition of the term "counterfeit substance" within its Guidelines. Because the term has a specific definition, we must use that definition rather than the plain meaning of the term "counterfeit" in defining "counterfeit substance." *See Stenberg*, 530 U.S. at 942.

Moreover, even if the section 802(7) definition of the term "counterfeit substance" was not directly incorporated into the Guidelines, we would still be compelled to apply this definition because it is well-established within the realm of controlled substance offenses. The definition of "counterfeit substance" utilized by federal law is also pervasive throughout state law. The Uniform Controlled Substances Act ("UCSA") describes the ban on counterfeit substances as follows:

> A person may not knowingly or intentionally manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance that, or the container or labeling of which, without authorization, bears the trademark, trade name or other identifying mark, imprint, number, or device or a likeness thereof, of a manufacture, distributor, or dispenser, other than the person who manufactured, distributed, or dispensed the substance.

UNIFORM CONTROLLED SUBSTANCES ACT § 404(a) (1994). Again, this definition identifies a counterfeit substance as a controlled substance that has been mislabeled so as to misrepresent its manufacturer, distributor, or dispenser. Because the USCA has been substantially adopted in all fifty states and the District of Columbia, it is not surprising that states similarly define the term "counterfeit substance." For instance, Texas, where Crittendon was convicted of his "simulated controlled substance" offense, defines "counterfeit substance" as:

> [A] controlled substance that, without authorization, bears or is in a container or has a label the bears an actual trademark, trade name, or other identifying mark, imprint, number, or device of a manufacturer, distributor, or dispenser other than the person who in fact manufactured, distributed, or dispensed the substance.

TEX. HEALTH & SAFETY CODE § 481.002(7). Many other states also employ a similar definition of the term "counterfeit substance." *See e.g.*, LA. R.S. § 40:961(9) (defining "counterfeit substance"); MISS. CODE ANN. § 41-29-105(g)(same).

Further, although it is not illegal under federal law to possess or deliver a simulated controlled substance, the UCSA and many states, including Texas, provide a separate offense for the possession or delivery of a simulated or imitation controlled substance. UNIFORM CONTROLLED SUBSTANCES ACT § 405(1994); TEX. HEALTH & SAFETY CODE § 482.002; *see e.g.,* LA. R.S. § 40:971.1(A); MISS. CODE ANN. § 41-29-146. Under Texas law, a "simulated controlled

-16-

substance" is defined as "a substance that is purported to be a controlled substance, but is chemically different from the controlled substance it is purported to be." TEX. HEALTH & SAFETY CODE § 482.001(4); *see also* LA. R.S. § 40:961(20) (defining "imitation controlled dangerous substance"). Thus, a simulated controlled substance is not a controlled substance, it is simply a substance that is wrongly represented to be a controlled substance. As the Texas statutes illustrate, the term "counterfeit substance" has a defined, well-established meaning distinct from the definition of a "simulated" or "imitation" controlled substance offense. Accordingly, we must apply this definition, rather than a definition based on the plain meaning of the term "counterfeit." *See Magnano*, 292 U.S. at 46–47.

Finally, the majority incorrectly concludes that it must alter the section 802(7) definition of "counterfeit substance" in order to ensure that similar crimes are treated similarly. Even if we were at liberty to depart from this definition, it is not warranted here because simulated controlled substance offenses are different from controlled or counterfeit substance offenses and thus need not be treated similarly.

The Guideline Commission promulgated section 4B1.1 to fulfill Congress's mandate, as established through 28 U.S.C. § 994(h), to enhance sentences for offenders who have repeatedly been convicted of crimes of violence and federal drug offenses. In drafting

section 4B1.1, the Guideline Commission acknowledged that it amended the language in section 994(h) to "avoid 'unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct.'" U.S.S.G. § 4B1.1, cmt. background. Based on this, the majority concludes that the Sentencing Commission intended to include offenses that would not fall within the express language of section 994(h), noting that the Guidelines include state law offenses, whereas section 994(h) does not.[1]

Notwithstanding its effect on state law offenses duplicative of federal offenses, this Background Commentary does not justify departing from the established definition of "counterfeit substance." Simulated controlled substance offenses are not similar to other controlled substance or counterfeit substance offenses for one critical reason: simulated controlled substance offenses do <u>not</u> involve controlled substances. Further, a simulated controlled substance offense is different from those types of crimes listed in section 994(h) because it is <u>not</u> a federal crime to possess or sell a simulated controlled substance. Thus, the rationale for including parallel state crimes is inapplicable, and the Guideline Commission has provided us with no

---

[1] The majority is correct that including state offenses along with federal offenses does promote the Commission's concern with treating similar crimes similarly. Without adding state offenses, a person convicted of two federal drug possession crimes would receive a career offender enhancement, whereas a person with two state drug possession charges would not.

-18-

indication that it intended to include state convictions for acts not mentioned within section 994(h). There is no reason to believe that the Commission intended to depart from the well-established statutory definition of "counterfeit substance" so as to include simulated controlled substance offenses even though simulated controlled substance offenses are not cognizable under federal law and do not involve controlled substances.

The Sentencing Guidelines require us to use the section 802(7) definition of "counterfeit substance" in defining that term for purposes of career offender status. Because this definition does not include Crittendon's conviction for delivery of simulated controlled substance, it is not a controlled substance offense as defined in section 4B1.2(b). Therefore, Crittendon does not have the two convictions necessary to be adjudged a career offender. Consequently, I would vacate the district court's sentence enhancement under section 4B1.1 and remand for resentencing.