[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 5, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13979
Non-Argument Calendar

_____

D. C. Docket No. 05-00046-CR-C-E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY SCOTT MINOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(June 5, 2007)**

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Jerry Scott Minor appeals his convictions and sentences for manufacturing

methamphetamine, 21 U.S.C. § 841(a)(1), using a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), and using a destructive device in furtherance of a drug trafficking crime, 18 U.S.C. §§ 921(a)(4)(A), 924(c)(1)(B)(ii).

## I.

Minor argues that the January 4, 2005, search of the curtilage of his property was an unconstitutional general search unsupported by probable cause, and therefore, the district court erred by denying his motion to suppress. During this search, a police officer discovered a bag of methamphetamine laying near the porch of Minor's trailer and, behind a small barn, a propane cylinder that had been used to store anhydrous ammonia. This evidence was used to obtain a search warrant for Minor's residence, where further evidence was located.

We review the denial of a motion to suppress under a mixed standard of review, reviewing the district court's findings of fact for clear error and its application of the law to those facts *de novo*. *United States v. Gil*, 204 F.3d 1347, 1350 (11th Cir. 2000) (per curiam). In *Maryland v. Buie* the Supreme Court held that "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be

2

immediately launched." 494 U.S. 325, 334, 110 S. Ct. 1093, 1098, 108 L. Ed. 2d 276 (1990). Furthermore, "the Court explained that the officers may go beyond that to sweep an area that a reasonably prudent officer believes, based on articulable facts, harbors an individual posing a danger to those on the arrest scene." *United States v. Bervaldi*, 226 F.3d 1256, 1268 (11th Cir. 2000) (discussing *Buie*).

The intrusion onto Minor's property occurred as part of a justified protective sweep incident to the arrest of Daniel Mroz's. While conducting surveillance, police officers had observed Mroz on Minor's property, along with Minor, Lucinda Harrison, and a man later identified as Wesley Meadows, Jr. The officers moved in to serve arrest warrants on Minor, Mroz, and Harrison when they appeared to be preparing to flee. Minor and Harrison succeeded in fleeing the property, but Mroz was arrested. At this time, the police were unaware of Meadows's location, but knew that he had fired shots at officers earlier that day. Further, police had information that Minor may have placed booby-traps around his property. These are articulable facts upon which a reasonably prudent police officer could rely upon to believe that the area—including Minor's curtilage—might harbor an individual posing a danger to the officers. *See Bervaldi*, 226 F.3d at 1268. While Minor questions the sincerity of the police

officers' assertions that they actually believed Meadows was a threat, the district court's finding of fact to the contrary was not clearly erroneous. Minor's Fourth Amendment rights were not violated when the police, in the course of conducting the protective sweep, discovered the methamphetamine and propane cylinder lying in plain view in Minor's yard. *See United States v. Hromada*, 49 F.3d 685, 690 (11th Cir. 1995). The district court did not err in denying Mroz's motion to suppress.

## II.

Minor also argues that there was insufficient evidence to support his convictions by a jury. The sufficiency of the evidence is a question of law that we review *de novo*. *United States v. Keller*, 916 F.2d 628, 632 (11th Cir. 1990). However, in the course of this review, we "view[] the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *Id.* "In order to uphold the lower court's denial of the judgment of acquittal and the jury's guilty verdict, this court need only find that a reasonable factfinder could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *Id.*

There was sufficient evidence to support Minor's convictions. Minor confessed to manufacturing methamphetamine and to using firearms to protect his

drug operation. As to the charge of using a destructive device in furtherance of a drug-trafficking offense, the government relied upon the testimony of Edward Eugene Holmes, who testified that he and Minor manufactured methamphetamine together and that they used firearms to protect their drug manufacturing operation. Even if Holmes's testimony had been the only evidence, the uncorroborated testimony of an accomplice is sufficient to support a conviction so long as it is not on its face incredible or otherwise insubstantial. *United States v. LeQuire*, 943 F.2d 1554, 1562 (11th Cir. 1991). Holmes's inability to say exactly when between 2000 and 2002 he began manufacturing methamphetamine with Minor does not render his testimony incredible or otherwise insubstantial. *See id.* ("For a witness's testimony to be incredible or insubstantial on its face, it must be testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.") (alteration in original) (internal quotation marks omitted). Holmes testified that Minor had carried a dynamite bomb in order to "scare people off" who might otherwise attempt to interfere with the drug manufacturing. The jury was entitled to credit Holmes's testimony, and we do not intrude on such a decision. *See United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997) (stating that it is the exclusive province of the jury to determine whether a witness is credible).

Here, in addition to Holmes's testimony, the police found a dynamite bomb in Minor's residence along with other materials that Minor had confessed were used in his drug manufacturing operation. Further, an ATF agent testified that the bomb was designed as a weapon and was 10 to 20 times larger than was necessary for the purpose Minor claimed he intended the bomb—destroying beaver dams. Accordingly, there was sufficient evidence for the jury to find Minor guilty of using a destructive device in furtherance of a drug-trafficking crime.

## III.

Finally, Minor argues that the district court erred in its finding of the quantity of drugs for which he was responsible. Minor contends that the drug quantity finding was based on the broadest reading of Holmes's testimony, which was inconsistent and unreliable.

The district court's determination of drug quantity is a finding of fact that we review for clear error. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). "When a defendant objects to a factual finding that is used in calculating his guideline sentence, such as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence." *Id.*

The district court did not clearly err in holding Minor responsible for over 1.5 kilograms of methamphetamine. "Where there is no drug seizure or the

6

amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1 cmt. n.12. Furthermore, "[i]n estimating the quantity of drugs attributable to a defendant, a court may base its computation on evidence showing the average frequency and amount of a defendant's drug sales over a given period of time." *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996). "Thus, sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant." *Rodriguez*, 398 F.3d at 1296 (internal quotation marks and citations omitted).

The Presentence Investigation Report recommended holding Minor liable for 4.16 kilograms of methamphetamine, based on Holmes's testimony that Minor had produced 10 grams per cook, 2 to 3 times per week, over four years. However, even using a more conservative estimate, the evidence is clear that Minor was responsible for well in excess of 1.5 kilograms of methamphetamine. Both Holmes's testimony and Minor's confession agree that Minor produced at least 10 grams of methamphetamine per "cooking" session. For 2002 and 2003, even assuming Minor cooked only once a week, at 10 grams per cooking session he would have yielded a total output of 1.04 kilograms of methamphetamine. Minor himself confessed to having "cooked" approximately 58 times in 2004, which

7

would have yielded 0.58 kilograms of methamphetamine for that year. Thus, even a very conservative estimate of Minor's production for the years 2002–2004 is 1.62 kilograms of methamphetamine. Therefore, the district court did not clearly err in finding that Minor was responsible for over 1.5 kilograms of methamphetamine.

After careful consideration of the briefs, and thorough review of the record, we find no reversible error. Accordingly, we affirm Minor's convictions and sentence.

**AFFIRMED.**