[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11889
Non-Argument Calendar

_____

D.C. Docket No. 8:18-cr-00596-JDW-CPT-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL ANGEL COLON-RIVERA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 3, 2021)

Before MARTIN, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Miguel Angel Colon-Rivera pled guilty to conspiracy to possess with intent

to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§

841(a)(1), 841(b)(1)(A)(ii) and 846, after his fingerprints were found on a three-kilogram package of cocaine sent by mail from Puerto Rico to an address in Florida. At sentencing, the district court determined that he was accountable for between 450 and 500 kilograms of cocaine, and then sentenced him to 168 months in prison. Colon-Rivera appeals, arguing that the district court clearly erred in applying the relevant conduct guideline, U.S.S.G. § 1B1.3, to the facts of his case in determining the scope of the jointly undertaken criminal activity and the corresponding drug quantity for which he was accountable.

We review for clear error the district court's determination of the drug quantity attributable to a defendant. *United States v. Reeves*, 742 F.3d 487, 506 (11th Cir. 2014). We also review for clear error the district court's application of U.S.S.G. § 1B1.3 to the facts of a case. *United States v. Valladares*, 544 F.3d 1257, 1267 (11th Cir. 2008). We will reverse for clear error only when we are left with a definite and firm conviction that the district court made a mistake. *United States v. Barsoum*, 763 F.3d 1321, 1333 (11th Cir. 2014). A district court's choice between two reasonable constructions of the evidence is not clearly erroneous. *Id.*

The district court must approximate the drug quantity when, as here, a defendant's base offense level under the guidelines is determined by drug quantity, and the amount of drugs seized does not reflect the scale of the offense. *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996); U.S.S.G. § 2D1.1, cmt. n.5.

2

This determination may be based on fair, accurate, and conservative estimates of drug quantities attributable to the defendant, but not on mere speculation. *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998). It is the government's burden to prove drug quantity by a preponderance of the evidence. *Frazier*, 89 F.3d at 1506.

"For sentencing purposes a member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in connection with that activity." *United States v. Ismond*, 993 F.2d 1498, 1499 (11th Cir. 1993); *see* U.S.S.G. § 1B1.3(a)(1) (defining both sets of conduct as "relevant conduct"). To hold the defendant responsible for the conduct of others, the district court "must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)," which is not necessarily the same as the scope of the entire conspiracy. U.S.S.G. § 1B1.3, cmt. n.3(B). To do so, the court may consider any implicit agreement fairly inferred from the conduct of the defendant and others. *Id.* Once the scope of activity is established, the court must evaluate whether the conduct of others was in furtherance of, and reasonably foreseeable in connection with, that jointly undertaken activity. *Id.*, cmt. n.3(C), (D); *see also United States v. Hunter*, 323 F.3d 1314, 1319–20 (11th Cir. 2003). The lack of individualized findings does

3

not require reversal where "the record supports the amount of drugs attributed to a defendant." *Ismond*, 993 F.2d at 1499.

Here, the district court did not clearly err in holding Colon-Rivera accountable for between 450 and 500 kilograms of cocaine, which corresponded to a base offense level of 38. *See* U.S.S.G. § 2D1.1(c)(1). Contrary to Colon-Rivera's claim, the court made particularized findings regarding the scope of the criminal activity that he agreed to jointly undertake, and the court's drug-quantity finding is adequately supported by the record. *See* U.S.S.G. § 1B1.3, cmt. n.3(B).

At sentencing, the government offered two witnesses to resolve Colon-Rivera's objection to the presentence investigation report's drug-quantity recommendation of 1,000 kilograms of cocaine. First, codefendant Jorge Colon Marin testified that from September 2017 until his arrest in July 2018 he received shipments of cocaine through the mail in Florida from Puerto Rico at the direction of Colon-Rivera's brother, Rafael Aleman. Colon Marin had no direct contact with Colon-Rivera in the conspiracy, but near the end of 2017 or early 2018 he complained about how the cocaine was packaged to Aleman, who said he would speak to Colon-Rivera. After that, the packaging improved somewhat. Colon Marin estimated that the conspiracy shipped "maybe 500" kilograms of cocaine in similarly wrapped packages between early 2018 and July 2018. Second, Detective Daniel DeGrace of the Tampa Police Department testified that approximately six linked

4

packages were sent from Puerto Rico to Florida in late June 2018.  Police recovered three of these packages, which each contained three kilograms of cocaine, and Colon-Rivera's fingerprints were found on one of the packages.

In making its drug quantity finding, the district court explained that under § 1B1.3 it must first "determine the scope of the criminal activity that the defendant agreed to jointly undertake."  After reviewing Colon-Rivera's plea admissions and the evidence presented at sentencing, the court found that "the scope of the criminal activity that this defendant agreed to jointly undertake is from early 2018 to the end of the conspiracy, which is alleged to have been November 2018, but I think the last seizure was July of 2018."  The court elaborated that "the scope includes all of those shipments within that timeframe, and this defendant, based on his own conduct, would have reasonably foreseen those shipments."

While a defendant is not necessarily responsible for all reasonably foreseeable conduct in a conspiracy over a specific period, *see Hunter*, 323 F.3d at 1319, the record here supports the district court's finding that the drug shipments at issue were within the scope of the criminal activity Colon-Rivera agreed to jointly undertake. *See Ismond*, 993 F.2d at 1499.  The evidence presented at sentencing, and cited by the district court, reflects that Colon-Rivera agreed to package cocaine for the conspiracy from early 2018 through at least July 2018, during which time Colon Marin received approximately 500 kilograms of cocaine at the direction of Aleman,

5

Colon-Rivera's brother.[1]  While there is no specific evidence that Colon-Rivera was personally responsible for packaging each and every shipment during this time, there is evidence to support the view that he was the primary packager of the cocaine shipped to Colon Marin.  According to Colon Marin, all the cocaine was packaged similarly, and Aleman said he would speak with Colon-Rivera after Colon Marin complained about the packaging of the cocaine, indicating that the packaging was Colon-Rivera's responsibility.  Moreover, Colon-Rivera admits on appeal that he was directly involved in the packages sent in late June 2018, several of which were intercepted by law enforcement.

Based on the evidence as a whole, we are not left with a definite and firm conviction that the district court made a mistake in concluding that the larger drug quantity reflected in Colon Marin's testimony was within the scope and in furtherance of, and reasonably foreseeable in connection with, the criminal activity Colon-Rivera agreed to jointly undertake.  *See Valladares*, 544 F.3d at 1267; *Ismond*, 993 F.2d at 1499.  We therefore affirm the district court's determination that Colon-Rivera was accountable for between 450 and 500 kilograms of cocaine.

**AFFIRMED**.

---

[1] Colon-Rivera does not clearly argue on appeal that Colon Marin's testimony was too vague or uncertain regarding the quantity of drugs he received from Puerto Rico, nor does he contend that Aleman's hearsay statements to Colon Marin were not reliable enough to be considered at sentencing.  We therefore do not consider these issues.