[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15691
_____

D.C. Docket No.  1:10-cr-00251-TWT-AJB-8


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISRAEL SALGADO,
a.k.a. Paisa,

Defendant-Appellant.


_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(March 14, 2014)

Before CARNES, Chief Judge, HULL and COX, Circuit Judges.

CARNES, Chief Judge:

An application note to the guideline that governs the calculation of the offense level for money laundering instructs courts to consider only the money laundering offense itself and not the underlying crime that generated the money that was laundered.  See United States Sentencing Guidelines § 2S1.1 cmt. n.2(C) (2013).[1]  In this case the district court in calculating the guidelines range mistakenly considered the defendant's role in the drug conspiracy that generated the dirty money.  As a result, the defendant received a higher adjusted offense level and guidelines range than he might have received if the application note to § 2S1.1 had been followed.  That mistake and the resulting miscalculation must be laundered out of the sentence in a resentence proceeding.

I.

In 2009 the Drug Enforcement Administration began investigating a Mexican drug trafficking organization that was transporting cocaine and heroin into Atlanta, distributing it to street-level dealers, then smuggling the cash back into Mexico.  In 2010 a federal grand jury indicted eleven people, charging them with various conspiracy, drug, and money laundering offenses stemming from their different roles in the operation.  Three of those eleven defendants went to trial: Catarino Moreno, Israel Salgado, and Artis Lisbon.  After a nine-day jury trial, all

---

[1] Application Note 2(C) applies only if, as here, the defendant's offense level is calculated under U.S.S.G. § 2S1.1(a)(1).  See U.S.S.G. § 2S1.1 cmt. n.2(C).  The note does not apply if the defendant's offense level is calculated under § 2S1.1(a)(1)(2).

three were convicted.  They all appealed, raising numerous challenges to their convictions and sentences.  This is Salgado's appeal.[2]  He raises eight issues, only one of which merits discussion:  his contention that the district court procedurally erred in calculating his guidelines range by failing to follow Application Note 2(C) of § 2S1.1.[3]

Salgado stood trial on three charges:  (1) conspiracy to distribute drugs, in violation of 21 U.S.C. §§ 841(b)(1)(A)(i) and 846; (2) conspiracy to launder money, in violation of 18 U.S.C. § 1956(h); and (3) possession with intent to distribute at least one kilogram of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(i).  The government presented evidence that Salgado helped broker a heroin deal between an unidentified third-party supplier and his codefendant Lisbon.  There was also evidence that Salgado oversaw the installment of a hidden compartment in Lisbon's truck so that he could transport drugs undetected.  Finally, one of the government's witnesses testified that Salgado had told a coconspirator that they needed "to bring another person" in "[t]o help us

---

[2] Although the appeals of Moreno, No. 12-15621, and Lisbon, No. 12-15729, were consolidated with this appeal, we are separating Salgado's appeal from the other two for purposes of issuing opinions.  Moreno's and Lisbon's appeals will be decided in a later opinion.

[3] In addition to this issue, Salgado also contends that:  (1) the district court erred by denying his motion to suppress; (2) the district court abused its discretion by admitting evidence of heroin seized in Junction City, Kansas; (3) the district court abused its discretion by denying his request for a jury instruction on the law of multiple conspiracies; (4) there was a material variance from his indictment; (5) the evidence at trial was insufficient to support his drug offense convictions; (6) the evidence at trial was insufficient to support his money laundering conviction; and (7) his sentence is substantively unreasonable.  None of those contentions has merit.

3

take care of the money or count the money." After hearing that testimony as well as other evidence, the jury found Salgado guilty on all three counts.

Salgado's presentence investigation report began calculating his guidelines range by grouping his three convictions together under U.S.S.G. § 3D1.2(c). It did so because Salgado's distribution and possession convictions were "the underlying offense[s] from which the laundered funds were derived." U.S.S.G. § 2S1.1 cmt. n.6.[4] At that point, the PSR should have determined which of the three grouped convictions would yield the highest adjusted offense level by calculating Salgado's offense level under the guideline for each offense. See id. § 3D1.3(a) & cmt. n.2; see also United States v. Rushton, 738 F.3d 854, 858 (7th Cir. 2013) ("The report should have calculated offense levels for both counts, fraud and money laundering, and selected the higher of the two as the basis for calculating the defendant's guidelines sentencing range.") (citing U.S.S.G. § 3D1.3(a) cmt. n.2). Instead, without explanation the PSR used § 2S1.1, the money laundering guideline, to determine the base offense level.

This is how the PSR calculated Salgado's offense level under § 2S1.1. Because Salgado was involved in the underlying conspiracy to distribute heroin and there was evidence of the amount of heroin involved, § 2S1.1(a)(1) required

---

[4] See United States v. Descent, 292 F.3d 703, 708 (11th Cir. 2002) (discussing Application Note 6's purpose in light of the 2001 amendment that turned § 2S1.1 into "a single guideline for violations of both 18 U.S.C. § 1956 and 18 U.S.C. § 1957").

the PSR to set his base offense level using the guideline for the underlying conspiracy to distribute heroin, which was § 2D1.1. See U.S.S.G. § 2S1.1(a)(1) & cmt. n.2(A). The PSR determined that the evidence at trial showed Salgado was accountable for at least three kilograms of heroin, so it recommended a base offense level of 34. See id. § 2D1.1(c). The PSR then returned to § 2S1.1 to determine if any adjustments applied. It added 2 levels under § 2S1.1(b)(2)(B) because Salgado was convicted for money laundering under 18 U.S.C. § 1956. It added another 2 levels under § 3B1.1(c) because Salgado's role in brokering the heroin deal and other transactions qualified him as a manager, leader, or supervisor. Those enhancements gave Salgado a total offense level of 38. That offense level, combined with his criminal history category of I, gave Salgado a guidelines range of 235 to 293 months in prison, with a mandatory minimum sentence of ten years.

Salgado raised several objections to the PSR. First, he challenged the drug quantity used to set his base offense level, arguing that he was accountable for less than three kilograms of heroin, not for three to ten kilograms. Compare id. § 2D1.1(c)(4) (setting an offense level of 32 where less than three kilograms of heroin are involved), with id. § 2D1.1(c)(3) (setting an offense level of 34 where three to ten kilograms of heroin are involved). Second, he objected to the role enhancement, arguing that the evidence of his role in the heroin distribution

5

showed that he deserved a 2-level "minor participant" reduction instead of an enhancement.  See id. § 3B1.2(b).  Finally, he argued that, based on the evidence about his involvement in the money laundering, he deserved either a 4-level "minimal participant" or a 2-level "minor participant" reduction.  See id. § 3B1.2.

At the sentence hearing, the district court sustained Salgado's drug-quantity objection but not his other two objections.  The court overruled Salgado's objection to the role enhancement based on the part he played in brokering the heroin deal, not based on the part he played in the money laundering conspiracy. The court overruled Salgado's objection to not receiving a role reduction based on the part he played in the money laundering conspiracy without making any finding about his role in it. The court thought that Salgado could not receive "any kind of separate role reduction based upon what he did in the money laundering context as opposed to the overall conspiracy."  After resolving Salgado's objections, the court's revised guidelines calculation resulted in a total offense level of 36 and a guidelines range of 188 to 235 months in prison.  Salgado then requested a downward variance from that guidelines range.  He asked for the ten-year statutory minimum based on his comparatively small role in both conspiracies and the lower sentences received by his codefendants who had pleaded guilty.  The district court denied that request and sentenced Salgado to 188 months, which was the bottom of the guidelines range.

6

II.

The issue is not the district court's finding that Salgado's role in the heroin distribution conspiracy made him a manager, leader, or supervisor of it, which would be a factual issue reviewed only for clear error. See United States v. Rodriguez De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). Instead, the issue is whether the district court misapplied the guidelines by using Salgado's conduct in the underlying drug conspiracy to impose a role enhancement when calculating his adjusted offense level for money laundering under U.S.S.G. § 2S1.1(a)(1). That involves an interpretation of the guidelines, which is a matter we review de novo. See United States v. Barrington, 648 F.3d 1178, 1194–95 (11th Cir. 2011).[5]

Section 1B1.5(c) of the guidelines provides that: "If the offense level is determined by a reference to another guideline under subsection (a) or (b)(1) above, the adjustments in Chapter Three (Adjustments) also are determined in respect to the referenced offense guideline, except as otherwise expressly provided." U.S.S.G. §1B1.5(c). That provision means that where a guideline determines a defendant's offense level by reference to another offense, the Chapter

---

[5] Before oral argument we asked the parties to file supplemental letter briefs addressing whether our review of this issue might be limited to plain error. See generally United States v. Rodriguez, 398 F.3d 1291, 1298–1300 (11th Cir. 2005). After reviewing those supplemental briefs, Salgado's written objections to the PSR, and the transcript of the sentence hearing, we are convinced that he did preserve this issue for de novo review.

7

Three adjustments are to be based on the guideline and rules for that other offense. The provision is, however, only a default rule, as the last four words of it indicate: "except as otherwise provided." Application Note 2(C) of § 2S1.1 is one of those "otherwise provided" situations. It instructs us that when setting an offense level under § 2S1.1(a)(1), a court should make Chapter Three adjustments based on the defendant's conduct in the money laundering offense itself, not based on his conduct in the offense from which the money that was laundered was obtained:

> Notwithstanding § 1B1.5(c), in cases in which [§ 2S1.1(a)(1)] applies, application of any Chapter Three adjustment shall be determined based on the offense covered by this guideline (i.e., the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived.

U.S.S.G. § 2S1.1 cmt. n.2(C). That application note's meaning for this case is straightforward: When the district court calculated Salgado's offense level under § 2S1.1(a)(1), it could base a role enhancement on his conduct in the money laundering conspiracy but not on his conduct in the underlying drug conspiracy.

Our understanding of Application Note 2(C) is consistent with the decisions of our sister circuits. The Sixth Circuit has held that Application Note 2(C) bars a defendant from receiving a role reduction under § 3B1.2(a) based on her minimal role in the underlying drug conspiracy instead of her role in the money laundering conspiracy. See United States v. Anderson, 526 F.3d 319, 328 (6th Cir. 2008). Similarly, the Tenth Circuit has held that a defendant's conduct in an underlying

8

drug conspiracy cannot be used to apply Chapter Three adjustments if the court is calculating his offense level under § 2S1.1(a)(1), but can be used for adjustments if the court is calculating his offense level under the drug offense guideline. See United States v. Keck, 643 F.3d 789, 800–01 (10th Cir. 2011) ("[W]e interpret Application Note 2(C) as governing only the applicability of adjustments on money-laundering convictions, as opposed to the offense calculations of other, related offenses."). In United States v. Byors, the Second Circuit implicitly took the same view. See 586 F.3d 222 (2d Cir. 2009). It did so by adopting a reading of the obstruction of justice enhancement under § 3C1.1 that is consistent with Application Note 2(C)'s instruction to base Chapter Three adjustments only on the money laundering offense when calculating an offense level under § 2S1.1(a)(1). See id. at 226–28. Most recently, the Seventh Circuit has summarized those holdings of the Second, Sixth, and Tenth Circuits as standing for the principle that a Chapter Three adjustment "is permissible in a money laundering case—but only when the [adjustment] relates to the money laundering itself rather than to the underlying offense (the offense that generated the money that the defendant laundered)." Rushton, 738 F.3d at 859 (citing U.S.S.G. § 2S1.1 cmt. n.2(C), Keck, Byors, and Anderson). And the First Circuit has observed that "application note 2(C) to the money-laundering guideline provides that Chapter Three adjustments should be determined with reference to the money-laundering offense and not to

9

the underlying offense." United States v. Cruzado-Laureano, 440 F.3d 44, 49 (1st Cir. 2006) (dicta) (emphasis omitted).

The government's arguments to the contrary are not persuasive. First, it argues that this reading of Application Note 2(C) is not plausible because it means that, in cases where a defendant played a significant role in a drug offense and faces both money laundering and drug charges, being convicted of both crimes would result in a lighter sentence than being convicted of only the drug offense. That is not so. The argument overlooks the function of § 3D1.3(a) when grouping counts at sentencing. That provision requires courts to use "the highest offense level of the counts in the group" after factoring in the Chapter Two and Three adjustments for each of those counts. U.S.S.G. § 3D1.3 cmt. n.2. If the defendant's role in the drug offense makes his adjusted offense level under the drug offense guideline higher than his adjusted offense level under the money laundering guideline, the court is to use the drug offense guideline. See, e.g., United States v. Ndiaye, 434 F.3d 1270, 1305 (11th Cir. 2006). As long as the PSR or the district court calculates the offense level for each of the grouped offenses, and the district court selects the offense with the highest offense level, Application Note 2(C) will not lead to an illogically light sentence.

The government also argues that a straightforward reading of Application Note 2(C) contravenes § 1B1.3's instruction that courts should consider all

10

relevant conduct when determining a defendant's role.  See generally Rodriguez De Varon, 175 F.3d at 934 ("[T]he district court must measure the defendant's role against her relevant conduct, that is, the conduct for which she has been held accountable under U.S.S.G. § 1B1.3.").  That argument overlooks the first three words of § 1B1.3, which tell courts that it defines the defendant's relevant conduct "[u]nless otherwise specified."  U.S.S.G. § 1B1.3(a).  Application Note 2(C), as we have pointed out, does specify otherwise.  That means, for purposes of § 2S1.1(a)(1), a defendant's relevant conduct for Chapter Three adjustments is limited to his part in the money laundering offense.  Cf. United States v. Kluger, 722 F.3d 549, 558–59 (3d Cir. 2013) (treating guidelines commentary as a specification for purposes of § 1B1.3(a)).  The specific exception  or carve out in Application Note 2(C) to § 2S1.1 is expressly provided for in the general provision that is § 1B1.3(a).  They are consistent.

## III.

Salgado's conviction is affirmed, but we vacate and remand his sentence for further proceedings consistent with this opinion.  On remand, the district court should calculate the offense levels for each of Salgado's three grouped offenses, see U.S.S.G. § 3D1.3(a) & cmt. n.2, which will include determining what role adjustment, if any, he should receive when calculating his offense level under § 2S1.1(a)(1).  Once the district court identifies the guideline that yields the highest

11

adjusted offense level, it should use that offense level to calculate the guidelines range and proceed accordingly.  We do not mean to imply that the district court, in its sound judgment, may not vary upward or downward from the guidelines range.

**AFFIRMED in part; VACATED and REMANDED in part.**