NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1244
_____

UNITED STATES OF AMERICA

v.

FRANCISCO LOPEZ
aka Luis Armando Garcia

Francisco Lopez,
                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-11-cr-00684-003
District Judge: The Honorable Paul S. Diamond

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 19, 2018

Before: SMITH, *Chief Judge*, HARDIMAN, and ROTH, *Circuit Judges*

(Filed: July 24, 2018)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, *Chief Judge*.

## I.

Francisco Lopez was convicted of marijuana distribution and money laundering offenses. On appeal, he argues that: (1) his Sixth Amendment right to confrontation was violated when a government agent presented testimonial statements from an out-of-court declarant; (2) hearsay was admitted in violation of Federal Rule of Evidence 801(d)(2)(E); and (3) the District Court erroneously applied an "organizer/leadership role" enhancement at sentencing. We conclude that neither the Confrontation Clause nor Rule 801 was violated, and that the District Court did not commit plain error in imposing the sentencing enhancement.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because we write for the parties only, we need not recite the facts or procedural history of this case.

## III.

Lopez argues that, at trial, the Government introduced statements from a cooperating co-defendant, Jorge Murillo, through the in-court testimony of Special Agent William Crogan. Lopez posits that Murillo's statements were "testimonial" under contemporary Confrontation Clause doctrine, and that because Murillo himself did not testify, Lopez had no opportunity to confront Murillo's statements. We exercise plenary review over Confrontation Clause challenges. *United States v. Berrios*, 676 F.3d 118, 125 (3d Cir. 2012).

Lopez fails to identify which of Murillo's statements, exactly, were introduced at trial. However, Lopez does argue that "allowing Murillo's statements made to Special Agent Crogan, that Lopez was a high level distributor who coordinated deliveries of tractor trailer truckloads of marijuana from Mexico . . . violated [Lopez's] Sixth Amendment right to confront the witnesses against him." Lopez Br. 17. As an example of testimony that violated his Confrontation Clause right, Lopez cites the testimony of Special Agent Crogan, in which he testified to the "significance" of a label on a bale of marijuana. *Id.* at 20 (citing JA 187–88).

Special Agent Crogan noted that the label could be used to track the bale, "just like a [sic] UPS package," and that he "kn[e]w in—in going through this investigation that most marijuana—this marijuana came from Mexico and a lot of marijuana that comes from Mexico is smuggled in bulk form on tractor trailer commercial trucks." JA 187–88. This testimony was relevant because Lopez was alleged to have smuggled marijuana on tractor trailers that originated from Mexico. Notably missing from Special Agent Crogan's testimony is any mention of statements made by Murillo. Special Agent Crogan did not, for example, testify that Murillo told him about the label on the marijuana. Rather, Special Agent Crogan mentions twice that his knowledge of the label stemmed from his "training and experience."[1]

---

[1] JA 188 ("I know based on my training and experience that this tracks the type of marijuana this is and perhaps the owner that delivered it and—and also the customer who's—who's ultimately going to take control of it."); *id.* ("[I]n my training and experience, I've been involved in investigations that marijuana can be transported a bunch of different ways, it depends on where it comes from. I know

Lopez essentially argues that Special Agent Crogan lied. Specifically, Lopez argues that Special Agent Crogan did not connect the marijuana to Mexico and tractor trailers because of his training, but rather because he knew of Murillo's statements to Government investigators indicating such a connection. But at trial Lopez had the opportunity to confront Special Agent Crogan and test his veracity before the finder of fact by asking Crogan to explain the basis for his statements. Had Special Agent Crogan said, for example, that "Murillo told me this marijuana was from Mexico," then our analysis would be different, since the Government would have been introducing testimonial statements by Murillo without providing Lopez the opportunity to confront those testimonial statements.[2] No such statements by Murillo were admitted. In light of Lopez's opportunity to confront Special Agent Crogan at trial, we hold that the Confrontation Clause was not violated.

---

in—in going through this investigation that most marijuana—this marijuana came from Mexico and a lot of marijuana that comes from Mexico is smuggled in bulk form on tractor trailer commercial trucks and you can fit a lot of contraband or drugs on—on a tractor trailer. This is what—this is all what this—this label means to me.").

[2] Murillo's statements were made to government investigators during interrogation and pre-trial proceedings. They therefore qualify as "testimonial" statements under contemporary Confrontation Clause doctrine, *Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015), and would have required confrontation had the Government sought to introduce them at trial. *See Berrios*, 676 F.3d, at 127 ("[O]ur Confrontation Clause inquiry is twofold. First, a court should determine whether the contested statement by an out-of-court declarant qualifies as testimonial under *Davis*[ *v. Washington*, 547 U.S. 813 (2006)] and its progeny. Second, the court should apply the appropriate safeguard. If the absent witness's statement is testimonial, then the Confrontation Clause requires "unavailability and a prior opportunity for cross-examination." *Crawford* [*v. Washington*], 541 U.S. [36,] 68 [(2004)]. If the

Lopez next argues that statements made to Karla Leon by non-testifying co-defendants Jorge Murillo and Cesar Vega-Castro should have been excluded from evidence because those statements were hearsay statements that were not made in furtherance of the conspiracy. The admissibility of such evidence is governed by Federal Rule of Evidence 801(d)(2)(E), which provides:

> **Rule 801. Definitions That Apply to This Article; Exclusions From Hearsay**
> . . .
> **(d) Statements That Are Not Hearsay**. A statement that meets the following conditions is not hearsay:
> . . .
> **(2) An Opposing Party's Statement**. The statement is offered against an opposing party and:
> . . .
>> **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.
>
> The statement must be considered but does not by itself establish the . . . existence of the conspiracy or participation in it under (E).

Fed R. Evid. 801(d)(2)(E). This Court has previously made clear that a coconspirator statement may be admitted under Rule 801(d)(2)(E) if it meets three conditions: "(1) there must be independent evidence establishing the existence of the conspiracy and connecting the declarant and defendant to it; (2) the statement must have been made in furtherance of the conspiracy; and (3) it must have been made during the course of the conspiracy." *United States v. Ammar*, 714 F.2d 238, 245 (3d Cir. 1983). Lopez takes issue with the Government's ability to satisfy the second prong of this three-pronged test,

---

statement is nontestimonial, then admissibility is governed solely by the rules of

arguing that "the statements regarding [his] alleged role in the offense or the alleged source and size of the marijuana deliveries were not statements made 'in furtherance of' any conspiracy." Lopez Br. 30.

The heart of Lopez's argument is that, while two conspiracies were at play at trial (*i.e.*, the drug distribution conspiracy and the money laundering conspiracy) Karla Leon was only charged with participation in the latter conspiracy, but nonetheless testified to the first. Lopez argues, for example, that "Leon testified that Murillo identified Lopez as 'the boss' of the drug conspiracy," as well as "that Murillo told her the drugs came from Mexico in tractor trailers," and that "she was told by Vega-Castro that people in Mexico were very upset that Murillo was talking to law enforcement after his arrest." Lopez Br. 28.

Lopez's argument proves unpersuasive. To start, "[t]he law is well settled that out-of-court statements may be admissible under Rule 801(d)(2)(E) even if the defendant is not formally charged with any conspiracy in the indictment." *United States v. Ellis*, 156 F.3d 493, 497 (3d Cir. 1998). Further, "[s]tatements are admissible under [Rule 801(d)(2)(E)] even if the basis for admission is a conspiracy different from the one charged." *United States v. Turner*, 718 F.3d 226, 231 (3d Cir. 2013) (internal quotation marks omitted). Our Rule 801 analysis is therefore unaffected by the Government's decision to refrain from formally charging Leon with participating in both of the relevant conspiracies.

evidence." (footnote omitted)).

Although the Government did not charge Leon regarding the drug distribution conspiracy, the Government argues that she played "an integral role" in that conspiracy by "moving a huge amount of proceeds obtained by" that conspiracy. Gov't Br. 27. It follows, according to the Government, that Leon "certainly participated in the drug conspiracy." *Id.* We agree with the Government.[3] As an un-charged member of the drug distribution conspiracy, the would-be hearsay included in Leon's statements qualified under the coconspirator exception of Rule 801(d)(2)(E). The statements were therefore not hearsay, and were properly admitted into evidence. The fact that Leon was not charged for participating in both conspiracies does not mean that she was not a member of both conspiracies. It just means that, in light of Leon's value as a cooperating witness, the Government chose not to charge her for all of the crimes that she was alleged to have committed. JA 323–27 (referring to plea agreement).

Although Lopez argues that Leon's statements were not "in furtherance" of the conspiracy, this Court has made clear that "[s]tatements between conspirators which . . . inform each other of the current status of the conspiracy further the ends of the conspiracy." *Amar*, 714 F.2d, at 252. Knowing who "the boss" of the conspiracy was,

---

[3] *See, e.g.*, JA 335–37 (Q. So, what did he, what did Mr. Murillo tell you that he and Cesar were doing? A. They were the ones making deposits at the banks here and in New York. . . . Q. And did there come a time when he told you what the money was from? A. Yes. Q. And when was that approximately? A. That was when he came—he went to Tucson and we met in person . . . . [H]e kind of told me everything and he said that they were doing drugs or they were selling drugs or getting loads of drugs here . . . Q. So, I'm going to back you up a little bit back to when he was asking to use your account. So, did you agree to let your account be used? A. I did.").

where the drugs came from, and that those near the source of the drugs were "very upset" about law enforcement snooping around into the conspiracy are all statements made in furtherance of the *drug distribution* conspiracy.

But whether or not Leon was a member of the drug distribution conspiracy, her statements were also in furtherance of the *money laundering* conspiracy with which she was formally charged. As the Government argues, "a person engaged in [the type of] extensive money laundering asked of [Leon] certainly needed to know where the money was coming from, and who the other participants and leaders were." Gov't Br. 27. We agree. Having this information allowed Leon to "kn[o]w who to trust and also underst[and] the vital need for secrecy in the endeavor." *Id.* We hold that the statements referred to by Leon were therefore made in furtherance of both conspiracies, and were properly admitted under Rule 801(d)(2)(E).[4]

---

[4] Importantly, Lopez only objected to one co-conspirator statement made by Leon. The factual determinations underlying whether that statement that is statement of a coconspirator under Rule 801 is therefore reviewed under the clear error standard of review. *United States v. Vega*, 285 F.3d 256, 264 (3d Cir. 2002). By comparison, unpreserved objections are reviewed for plain error. *United States v. Boone*, 279 F.3d 163, 174 n.6 (3d Cir. 2002). Lopez argues that he only objected once because after his first objection the District Court told him that it would be "pointless." Lopez Br. 27. This explanation does not excuse trial counsel from failing to make objections when appropriate and in the best interest of their client. Moreover, when considered in its proper context, the District Court's actual statement appears far less ominous than Lopez would have us believe. JA 282 ("Indeed, all of these writings are statements in furtherance—furtherance of a conspiracy, which is why I assume [defense counsel] didn't object, because it would have been a pointless objection."). We conclude that under either standard of review, the statements were properly admitted.

8

# V.

Finally, Lopez also contends that the District Court "erroneously applied an 'organizer/leadership role' enhancement" under § 3B1.1(a) of the United States Sentencing Guidelines. Lopez Br. 32. We disagree.

In his opening brief, Lopez argues that we should review this argument *de novo*. The Government responds that plain error review applies. In reply, Lopez acknowledges that "counsel did not cite the application note in his objections to the Presentence Report." Lopez Reply Br. 3. Nevertheless, Lopez insists that *de novo* review applies because he made "the identical *factual* arguments" in the District Court. *Id.* Lopez's attempt to salvage a more favorable standard of review is unpersuasive. In the District Court he challenged the application of the leadership enhancement of § 3B1.1(a) by arguing that the evidence was insufficient to support it. Because this is an entirely different argument than the one he raises on appeal, plain error review applies.

In support of his claim that § 3B1.1(a) does not apply to him, Lopez relies heavily on *United States v. Salgado*, 745 F.3d 1135 (11th Cir. 2014), where the Eleventh Circuit reversed the district court's application of § 3B1.1 to a defendant who had been convicted on both drug conspiracy and money laundering conspiracy charges. *Id.* at 1136. The Eleventh Circuit reasoned that the district court ran afoul of Application Note 2(c) to § 2S1.1[5] of the Sentencing Guidelines because the district court based the enhancement on conduct related to the "heroin deal" at the heart of the conspiracy. *Id.* at 1137-38, 1140.

---

[5] That application notes provides: "Notwithstanding § 1B1.5(c), in cases in which subsection (a)(1) applies, application of any Chapter Three adjustment shall be

9

But unlike in *Salgado*, where the enhancement was based solely on the defendant's role in the drug conspiracy, *id.* at 1137, Lopez acknowledges that the District Court applied the enhancement for his leadership role in "both" the drug and money laundering conspiracies. Lopez Br. 34–35. His conduct with respect to the money laundering conspiracy was sufficient on its own to support the application of the leadership enhancement of § 3B1.1. *See, e.g.*, JA 568 (deposits intended to avoid detection were made "at defendant's direction"); JA 571 (money-laundering operation "was directed by the defendant [and] employed sophisticated means to avoid detection").

Even assuming, *arguendo*, that the District Court committed error by referencing both conspiracies instead of the money laundering conspiracy alone, we conclude that any such error was not "plain." Lopez has not demonstrated a reasonable probability that the result would have been different had he properly raised this objection before the District Court. *See United States v. Marcus*, 560 U.S. 258, 262 (2010). If he had, the District Court would have likely clarified that Lopez's leadership of the money-laundering conspiracy justified the § 3B1.1 enhancement. Further, these circumstances do not rise to the level of a "miscarriage of justice." *See United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).[6]

_____

determined based on the offense covered by this guideline (*i.e.*, the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived." U.S.S.G. § 2S1.1, Comment., App. Note 2(C).

[6] In a letter written pursuant to Federal Rule of Appellate Procedure 28(j), Lopez argues that the Supreme Court's recent *Rosales-Mireles v. United States* opinion requires recalculation of his sentence. Although *Rosales-Mireles* provides guidance as to when a court of appeals should exercise its discretion to correct sentencing

10

## VI.

We hold that neither the Confrontation Clause nor Federal Rule of Evidence 801 was violated. We further hold that the District Court did not commit plain error in calculating Lopez's guideline range. The District Court's judgment will therefore be affirmed.

---

errors, *Rosales-Mireles* is inapplicable because the three preconditions "that must be met before a court may consider exercising its discretion to correct the error" have not been met in this appeal. *Rosales-Mireles v. United States*, No. 16-9493, 2018 WL 3013806, at *5 (U.S. June 18, 2018). Namely, Lopez has failed to establish that the alleged sentencing error was plain. *Id.* ("[T]he error must be plain—that is to say, clear or obvious.") (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)).