[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13725
Non-Argument Calendar

_____

D.C. Docket No. 5:16-cr-00017-MTT-CHW-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CURTIS HOLMES,
a.k.a. CJ,

Defendant-Appellant.

_____

No. 17-13728
Non-Argument Calendar

_____

D.C. Docket No.  5:16-cr-00017-MTT-CHW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEOFFREY LARRY,
a.k.a. Jeff,

Defendant-Appellant.

_____

No. 17-13931
Non-Argument Calendar
_____

D.C. Docket No.  5:16-cr-00017-MTT-CHW-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NICHOLAS J. LARRY,
a.k.a. Nick,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Georgia

_____

(April 4, 2019)

2

Before WILLIAM PRYOR, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Geoffrey Larry, Nicholas Larry, and Curtis Holmes appeal on several grounds their sentences imposed by the district court after they each pleaded guilty to one count of distributing cocaine base. Geoffrey, Nicholas, and Holmes argue that the district court erred in calculating their base offense levels under U.S.S.G. § 2D1.1 by including drug quantities based on information provided by unreliable confidential informants. Geoffrey and Holmes challenge the district court's application of a two-level enhancement under § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance ("premises enhancement"). Geoffrey also argues that the district court erred by applying a two-level enhancement under § 2D1.1(b)(1) for possessing a firearm in the offense ("firearm enhancement") and by assigning him two additional criminal history points under § 4A1.1(d) for committing the instant offense during a prior sentence of probation. After careful consideration of the briefs and the record, we affirm.

## I.     BACKGROUND

Geoffrey, Nicholas, and Holmes came to the attention of state and federal law enforcement after local authorities identified them as individuals suspected of being involved in a drug distribution organization. During the resulting

3

investigation, state agents interviewed a county jail inmate who told them that Geoffrey was a main provider of cocaine in the Macon County, Georgia area who supplied his brother Nicholas and others with cocaine for distribution. The informant stated that Nicholas sold cocaine from a house on MLK Jr. Drive in Montezuma, Georgia, which was called the "Pink House." Doc. 143 at 10 ¶ 12.[1] Authorities also received reports of the smell of marijuana coming from inside an apartment located on Vienna Road in Montezuma ("Vienna Road apartment"), where Geoffrey and his sister lived.

Law enforcement used confidential informants to purchase crack cocaine from Geoffrey and Nicholas on several occasions. Informants purchased crack from Nicholas and Geoffrey at a convenience store and at a home located at 312 River Road in Montezuma ("River Road house"). According to these informants, Holmes was present for at least two of these purchases at the River Road house. The informants also reported that during the purchases multiple firearms sat on a table near where Nicholas and Holmes had been sitting.

Law enforcement eventually executed search and arrest warrants at the River Road house, the Vienna Road apartment, and other locations.[2] At the River Road house, agents discovered powder cocaine, crack cocaine, and marijuana, among

---

[1] Citations to "Doc. #" refer to numbered entries on the district court's docket.

[2] The Pink House suffered severe fire damage before the search warrants were executed.

4

other things.  At the Vienna Road apartment, law enforcement found a kitchen cabinet containing powder cocaine, various items commonly used to turn powder cocaine into crack, and Geoffrey's driver's license.  The searches produced a total of 80.73 grams of cocaine base, 68 grams of powder cocaine, 25 grams of marijuana, and four firearms.  Geoffrey, Nicholas, and Holmes were indicted for several offenses; each pleaded guilty to one count of distributing cocaine base.

Before sentencing, a probation officer prepared presentence investigation reports for Geoffrey, Nicholas, and Holmes.  For Sentencing Guidelines purposes, the probation officer determined that the drug quantity for all three defendants included 25 grams of marijuana, 68 grams of cocaine, and 80.73 grams of crack cocaine, which equated to approximately 302 kilograms of marijuana.  The probation officer assigned each defendant a base offense level of 24 under U.S.S.G. § 2D1.1(a)(5), (c)(8) for an offense involving at least 100 kilograms but less than 400 kilograms of marijuana.  The defendants each received a two-level enhancement pursuant to § 2D1.1(b)(1) for possession of a dangerous weapon.  The probation officer also added a two-level enhancement for each defendant under § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance.  Each defendant's offense level was reduced by three levels for acceptance of responsibility under § 3E1.1, rendering a total offense level of 25.

For Geoffrey, the probation officer calculated three criminal history points based on his prior convictions. Because the instant offense was committed while Geoffrey was on probation for a 2014 conviction for driving under the influence of alcohol and driving with a suspended license, the probation officer added two points under U.S.S.G. § 4A1.1(d). Geoffrey's five criminal history points placed him in a criminal history category of III. With a total offense level of 25 and a criminal history category of III, his advisory guideline range was 70 to 87 months' imprisonment.

For Nicholas, the probation officer calculated three criminal history points based on his prior convictions, placing him in criminal history category II. With a total offense level of 25 and a criminal history category of II, Nicholas's advisory guideline range was 63 to 78 months' imprisonment.

For Holmes, the probation officer calculated seven criminal history points based on his prior convictions. Because Holmes committed the instant offense while on probation for a 2004 conviction for selling marijuana, the probation officer added two points under § 4A1.1(d). Holmes's nine criminal history points placed him in criminal history category IV. With a total offense level of 25 and a criminal history category of IV, Holmes' advisory guideline range was 84 to 105 months' imprisonment.

The government objected to the probation officer's base offense level calculation for each defendant on the ground that the probation officer failed to include drug quantities from various drug sales to confidential informants. At sentencing, the district court held an evidentiary hearing where the government presented testimony supporting its objections. The government called as witnesses law enforcement officers who testified about additional drug sales the defendants allegedly made to confidential informants outside the officers' presences. Brian Queener, an agent with the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives, testified that one of these informants, CI-1, told Queener that the informant had met Nicholas and Geoffrey through CI-1's girlfriend. According to CI-1, his girlfriend bought a total of 23 ounces of crack cocaine from the brothers' father over a three-month period in 2015; Geoffrey would supply the drugs to his father each time. Queener also testified that CI-1 stated that at some point CI-1's girlfriend began to deal with Nicholas, who sold her 18 additional ounces of crack cocaine; Queener was unsure whether this occurred in one purchase or was the aggregate of several smaller purchases. CI-1 informed Queener that he also purchased a total of 9 ounces of crack directly from Geoffrey in a series of small transactions. Queener testified he was aware that CI-1 had a felony conviction and that the GBI paid him in small amounts.

7

Queener testified that he also spoke with a second confidential informant, CI-2. CI-2 told Queener that he had previously purchased drugs from the Larry brothers for personal use. CI-2 also told Queener that throughout 2014 he purchased one ounce of crack cocaine per week for another person. For half of 2015, CI-2 continued buying one ounce of crack cocaine per week for this person; CI-2 also purchased an extra half-ounce each week to give to a second person.

On cross-examination, Queener testified that CI-1 told him about CI-1's history with the Larry brothers and Holmes five months after Geoffrey had been arrested. Queener also stated that to protect CI-1's safety he did not corroborate CI-1's accounts with the girlfriend; nor did Queener check the girlfriend's phone records to confirm that she in fact had set up the purchases. Queener noted that there was no surveillance of these transactions. He admitted that he did not personally review CI-1's criminal history, but he knew that the informant had provided other reliable information. Queener further stated that although CI-2 said he was not buying crack for himself, agents never drug tested him while he served as an informant.

After hearing this evidence and the parties' arguments, the district court agreed with the government that the drug quantity used to calculate the defendants' base offense level should have been higher. Based on CI-1's reports of purchasing 50 ounces of crack cocaine from the defendants, the court accepted the

8

government's proposal that 25 out of the 50 ounces should be included in the drug quantity. Based on CI-2's account, the court determined that he bought 91 ounces of crack cocaine from the defendants. The district court accepted the government's proposal to include 45 of the 91 ounces in the drug quantity. The court also found that the total drug quantity was attributable to each defendant.

In sentencing Geoffrey, Nicholas, and Holmes, the court determined that the drug quantity for each defendant, based on the equivalent amount of marijuana for the drugs at issue, was 7,305.6 kilograms; this resulted in a base offense level of 32 for an offense involving between 3,000 and 10,000 kilograms of marijuana. Applying the premises and firearm enhancements and a reduction for acceptance of responsibility for all three defendants, the district court calculated the total offense level as 33 for each defendant. After determining that Geoffrey's advisory guideline range was 168 to 210 months' imprisonment, the court sentenced Geoffrey to 170 months. The court calculated Nicholas's guideline range as 151 to 188 months' imprisonment and sentenced Nicholas to 155 months. After calculating Holmes's range as 188 to 235 months' imprisonment, the court varied downwards and imposed a 170-month sentence.

## II.    STANDARD OF REVIEW

We review the district court's interpretation of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Torrealba*, 339 F.3d

9

1238, 1242 (11th Cir. 2003).  Clear error arises only where "we are left with a definite and firm conviction that a mistake has been committed."  *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (internal quotation marks omitted).

## III.    DISCUSSION

Geoffrey, Nicholas, and Holmes appeal their sentences on several grounds. They each argue that the district court erred in calculating their base offense levels by improperly relying on the officers' hearsay testimony relaying statements made by CI-1 and CI-2.  Geoffrey and Holmes appeal the district court's application of the premises enhancement.  Geoffrey also appeals the application of the firearm enhancement.  In addition, Geoffrey appeals the district court's calculation of his criminal history category, specifically the court's finding that he committed the instant offense while serving a prior sentence.

We first discuss the district court's consideration of the hearsay testimony relaying the information from the confidential informants.  We then discuss the court's application of the premises enhancement, followed by the firearm enhancement.  We lastly turn to the district court's calculation of Geoffrey's criminal history.

10

A.    **The District Court Did Not Clearly Err in Considering Hearsay Testimony to Calculate the Drug Amounts.**

Geoffrey, Nicholas, and Holmes argue that the district court erred in relying on the officers' hearsay testimony about CI-1 and CI-2 to calculate their base offense levels. They contend the district court erred by failing to explicitly find that CI-1 and CI-2 were credible and by concluding that the information provided by the confidential informants was corroborated by the record. Nicholas and Holmes argue that CI-1's failure to provide details about whether his girlfriend was with him or whether the drug sales happened in one transaction or multiple showed a lack of credibility. Nicholas and Holmes also argue that CI-2's crack cocaine addiction and criminal history, including a past conviction for fraud or theft, undermined his credibility.

The government responds that the district court twice explicitly found the confidential informants credible. The government further contends that regardless of whether the district court explicitly found the confidential informants credible, the court did not err in relying on the hearsay testimony because the informants' accounts were supported by the record.

When a defendant objects to the drug quantity, the government bears the burden of proving the disputed amount by a preponderance of the evidence. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). If the amount of contraband seized does not reflect the scale of the offense, a sentencing court must

11

"approximate the quantity of the controlled substance." *Id.* (internal quotation marks omitted). The court may base its calculation "on evidence showing the average frequency and amount of a defendant's drug sales over a given period of time." *Id.* (internal quotation marks omitted). "Although sentencing may be based on fair, accurate, and conservative estimates of the quantity of drugs attributable to a defendant, sentencing cannot be based on calculations of drug quantities that are merely speculative." *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998).

A sentencing court may consider evidence in the form of hearsay in determining whether to enhance a defendant's sentence. *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010). Nonetheless, the evidence must have sufficient indicia of reliability, the district court generally must make explicit credibility findings, and the defendant must have an opportunity to rebut the evidence. *Id.* Even when a district court does not make explicit credibility findings, "the absence of such findings does not necessarily require reversal or remand where the reliability of the statements is apparent from the record." *United States v. Gordon*, 231 F.3d 750, 761 (11th Cir. 2000).

Here, the district court made two statements at sentencing about the confidential informants' credibility. First, in overruling an objection to their credibility, the court stated that "looking at the evidence overall, the accounts of

12

the confidential informants are consistent with the other evidence obtained during the course of the investigation." Doc 195 at 180. Second, the district court observed:

> So accepting that there's credibility issues with regard to confidential informants always, we all know where the government gets confidential informants from. They don't come in squeaky clean. And I accept that. And I take the credibility issues into account. But there is corroboration here of precisely what these two CIs reported from all the other evidence that we've heard and is detailed in the presentence report.

Doc. 195 at 241. These statements were sufficient to satisfy the requirement that the district court make explicit credibility findings regarding the informants' accounts.

We next consider whether the court erred in finding that the informants' accounts were sufficiently reliable. The Sentencing Guidelines allow a district court to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." *United States v. Docampo*, 573 F.3d 1091, 1098 (11th Cir. 2009) (quoting U.S.S.G. § 6A1.3(a)). Where, as here, a defendant has an opportunity to refute the evidence, a sentencing court may consider hearsay testimony bearing "minimal indicia of reliability." *United States v. Bourne*, 130 F.3d 1444, 1447 (11th Cir. 1997) (internal quotation marks omitted). To establish that hearsay evidence lacks minimal indicia of reliability, "a defendant must show (1) that the challenged evidence is materially false or

13

unreliable and (2) that it actually served as the basis for the sentence." *Ghertler*, 605 F.3d at 1269.

We conclude that the hearsay testimony regarding the accounts of CI-1 and CI-2 bore at least minimal indicia of reliability because the record corroborates the informants' accounts. The informants' accounts of regularly purchasing approximately an ounce of crack cocaine at a time, over an extended period, matched the information that law enforcement had gathered over the nearly two-year investigation. Law enforcement used the informants to purchase around an ounce of crack cocaine on multiple occasions. The searches of the River Road house, the Vienna Road apartment, and other homes produced more than 80 grams of crack cocaine, 68 grams of powder cocaine, and materials used to turn powder cocaine into crack. Although Nicholas and Holmes argue that CI-2 was unreliable because of his past drug use and criminal history, these circumstances alone are insufficient to render CI-2 unreliable, absent some evidence presented by the defendants showing that CI-2's memory was faulty due to a drug addiction or past dishonesty. *See United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997) ("[T]he fact that the witness has consistently lied in the past, engaged in various criminal activities, and thought that his testimony would benefit him . . . does not make his testimony incredible." (alterations adopted) (internal quotation marks omitted)), *modified on other grounds by United States v. Toler*, 144 F.3d 1423,

14

1426-28 (11th Cir. 1998); *United States v. Lee*, 68 F.3d 1267, 1276 (11th Cir. 1995) ("[T]he mere fact that these witnesses were drug users does not automatically prove that they are unreliable.  [The defendant] has pointed to no evidence [that] indicates that these witnesses were addicts with impaired memories, which would call their testimony into question.").  Because the informants' accounts were sufficiently reliable, the district court did not clearly err in relying on the hearsay statements to calculate the drug quantities attributable to Geoffrey, Nicholas, and Holmes.[3]

In support of their argument that the informants' accounts were unreliable, Geoffrey, Nicholas, and Holmes cite *United States v. Frazier*, 89 F.3d 1501 (11th Cir. 1996).  In *Frazier*, we reviewed a district court's findings as to the quantity of drugs attributable to three co-defendants who had been convicted of narcotics and firearms violations.  *Frazier*, 89 F.3d at 1503, 1505-07.  The district court had attributed increased drug quantities to these individuals based on a witness's testimony that the three had repeatedly sold an undetermined amount of drugs over an extended period of time.  *Id.* at 1505-07.  This witness testified that one of the individuals was "selling cocaine on a daily basis"; the witness also testified that the

---

[3] The government argues that because no defendant raised before the district court the arguments they each raise on appeal concerning the district court's drug-quantity finding, this issue should be reviewed for plain error.  We disagree.  All the defendants raised the issue of the informants' credibility at sentencing.

two remaining co-defendants "sold cocaine base two or three days per week during the summer." *Id.* at 1506-07. We noted that the witness did not testify to the specific amounts of drugs each co-defendant sold, nor did the court make specific findings as to the amount of drugs involved in each transaction or the number of transactions that occurred. *Id.* We vacated the district court's calculation of the co-defendants' sentences based on this witness's testimony because the testimony was insufficiently specific. *Id.*

*Frazier* does not compel us to vacate the district court's calculation of the drug quantities attributable to Geoffrey, Nicholas, or Holmes. Unlike in *Frazier*, the informants in this case, CI-1 and CI-2, testified to purchasing specific quantities of drugs from the three defendants over defined periods of time. The district court in this case thus relied on evidence that was more specific than the evidence before the district court in *Frazier*. The appellants' reliance on *Frazier* is therefore misplaced.[4]

---

[4] The defendants also rely on *United States v. Singleton*, 545 F.3d 932 (11th Cir. 2008). In *Singleton*, a defendant challenged a district court's calculation of the drug quantity used to calculate his sentence. *Singleton*, 545 F.3d at 934. Law enforcement had found powder cocaine and baking soda in the defendant's motel room. *Id.* at 935. The district court in calculating the drug quantity attributable to the defendant assumed that all the powder cocaine could be converted to crack cocaine. *Id.* We concluded that the district court's calculation of the drug quantity was impermissibly speculative because the district court found that law enforcement had recovered an insufficient amount of baking soda to convert all the powder cocaine to crack cocaine. *Id.* *Singleton* does not disturb our conclusion because it is factually distinct.

**B.    The District Court Did Not Err in Applying the Premises Enhancement.**

We next discuss the challenges to the district court's application of the two-level premises enhancement under U.S.S.G. § 2D1.1(b)(12) brought by Geoffrey and Holmes.  Geoffrey contends that the language of § 2D1.1(b)(12) and the guidelines' commentary required the district court to rely on evidence tying him directly to manufacturing or distributing drugs in or from the houses, rather than relying on the reasonably foreseeable conduct of co-conspirators.  Holmes argues that the enhancement should not have applied because the River Road house was primarily used as a residence and only collaterally used for drug sales.

The government responds that Geoffrey's narrow interpretation of § 2D1.1(b)(12) conflicts with the totality-of-the-circumstances approach articulated by this Court.  According to the government, although Geoffrey never had a possessory interest in the houses, there was ample evidence that he supplied the drugs that were used there.  As an alternative basis for affirming the enhancement's application to Geoffrey, the government contends that he maintained the Vienna Road apartment as a drug premises, as evidenced by his exclusive control over and possession of the two kitchen cabinets that he used to store drugs and materials for manufacturing cocaine base.  The government further argues that the § 2D1.1(b)(12) enhancement applied to Holmes because the drug activity occurring at both houses was more than incidental or collateral.

17

We first consider Geoffrey's argument that the district court erred in applying the premises enhancement by considering the relevant conduct of other members of the drug sale conspiracy. The question whether a sentencing court misapplied the guidelines by enhancing a defendant's sentence based on the jointly undertaken criminal activity of a defendant's co-conspirators involves an interpretation of the guidelines that we review *de novo*. *United States v. Salgado*, 745 F.3d 1135, 1138 (11th Cir. 2014).

Section 2D1.1(b)(12) of the guidelines adds a two-level enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). In calculating a defendant's guideline range, a sentencing court must consider all relevant conduct in the offense, including in some cases the conduct of others acting in concert with the defendant. *United States v. Chavez*, 584 F.3d 1354, 1367-68 (11th Cir. 2009) (citing U.S.S.G. § 1B1.3(a)(1)). As a general matter, a court considering the application of an enhancement under chapter two of the guidelines may hold a defendant accountable for acts and omissions of other participants in a "jointly undertaken criminal activity," as long as the others' conduct was (i) within the scope of the joint activity, (ii) in furtherance of this criminal activity, and (iii) reasonably foreseeable in connection with the criminal activity. U.S.S.G. § 1B1.3(a)(1)(B). As an exception to this general rule, a sentencing court must not

18

enhance a defendant's sentence based on the jointly undertaken criminal activity of a defendant's co-conspirators when a guideline specifies otherwise. *Id.* § 1B1.3(a).

In determining whether the district court properly applied the premises enhancement based on the conduct of Geoffrey's co-conspirators, we are guided by our decisions in *United States v. Cook*, 181 F.3d 1232 (11th Cir. 1999), and *United States v. McClain*, 252 F.3d 1279 (11th Cir. 2001). In *Cook*, we considered whether a sentencing court could enhance the sentences of two co-defendants pursuant to U.S.S.G. § 3C1.2 based the conduct of other members of the conspiracy. *See Cook*, 181 F.3d at 1234. Section 3C1.2 instructed sentencing courts to apply a two-level enhancement " '[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.' " *Id.* at 1233 (quoting U.S.S.G. § 3C1.2). An application note stated that " '[u]nder this section, the defendant is accountable for his own conduct and for conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused.' " *Id.* at 1233-34 (quoting § 3C1.2 cmt. n.5.). We concluded that the application note specified an exception to the general rule found in § 1B1.3(a)(1)(B). *Id.* at 1235-36. We reasoned that "[b]y limiting the responsibility for another's actions to those instances when the defendant 'aided or abetted, counseled, commanded, induced, procured, or willfully caused' that person's conduct, [the application note] establishes an

19

exception to the general rule in § 1B1.3(a)(1)(B)." *Id.* at 1235 (quoting § 3C1.2 cmt. n.5). We thus held that the court could not consider the conduct of others acting in concert with the defendant to determine whether § 3C1.2's enhancement applied. *Id.* at 1235-36.

In *McClain*, we considered whether U.S.S.G. § 3B1.4's enhancement could be imposed based on the jointly undertaken criminal activity of a defendant's co-conspirators. *McClain*, 252 F.3d at 1287. Section 3B1.4 provides for a two-level enhancement " '[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense.' " *McClain*, 252 F.3d at 1285 (quoting § 3B1.4). The defendant argued that the enhancement could not apply based on co-conspirators' conduct because such a construction would render the enhancement applicable on a strict-liability basis. *See id.* at 1287. We held, however, that § 3B1.4's enhancement could properly be imposed based on the jointly undertaken criminal activity of co-conspirators. *Id.* at 1288. We reasoned that this construction of § 3B1.4 would not allow the enhancement to apply on a strict-liability basis because § 1B1.3(a)(1)(B) allows co-conspirators' conduct to serve as the basis for imposing the enhancement only when the co-conspirators' conduct was reasonably foreseeable. *Id.* at 1287-88.

Nothing in § 2D1.1(b)(12) prohibits a sentencing court from imposing the premises enhancement based on the jointly undertaken criminal activity of co-conspirators.  Section 2D1.1(b)(12) differs from the guideline provision at issue in *Cook* because § 2D1.1(b)(12) lacks an application note limiting the effect of § 1B1.3(a)(1)(B).

Geoffrey argues that § 2D1.1(b)(12) cannot be imposed based on the jointly undertaken criminal activity of a co-conspirator because § 2D1.1(b)(12) explicitly applies "[i]f *the defendant* maintained a premises for the purpose of manufacturing or distributing a controlled substance."  U.S.S.G. § 2D1.1(b)(12) (emphasis added).  But *McClain* implicitly rejected this argument.  Section 3B1.4 also applies "[i]f the defendant" engages in certain conduct, *id.* § 3B1.4, yet this language was insufficient for the court to conclude in *McClain* that § 3B1.4 cannot apply based on a co-conspirator's reasonably foreseeable conduct.  We therefore conclude that the district court did not err in imposing the premises enhancement based on the jointly undertaken criminal activity of co-conspirators.

We next consider Holmes's argument that the district court should not have imposed the premises enhancement because the River Road house was primarily used as a residence and only collaterally used for drug sales.  We review a sentencing court's factual finding that a defendant maintained a premises for the manufacture or distribution of drugs for clear error.  *United States v. George*, 872

21

F.3d 1197, 1205 (11th Cir. 2017).  An application note to § 2D1.1(b)(12) provides

that a sentencing court may impose the premises enhancement if the premises was

used for more than just drug-related activity:

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises.  In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. § 2D1.1 cmt. n.17.  To determine whether a defendant maintained a

premises for drug distribution or manufacture, [a] sentencing court applies a

totality-of-the-circumstances approach.  *See George*, 872 F.3d at 1205-06.

Here, law enforcement used an informant to purchase crack from Nicholas at

the River Road house twice while Holmes was present.  During a search of the

River Road house, the officers recovered two bags of suspected crack cocaine,

several bags of suspected marijuana, a dish with a razor blade, ziplock bags, and

two digital scales.  Based on this evidence, the district court did not clearly err in

concluding that drug activity was more than an incidental or collateral use of the

River Road house.  *See id.* at 1206 (concluding that "one of the primary purposes

of [an] apartment was for the distribution of drugs" when someone "purchased

multiple pounds of marijuana" in the apartment and it contained "packaging

equipment, scales, heat-sealing machines, and firearms"). The district court thus did not err in imposing the premises enhancement on Holmes.

**C.     The District Court Did Not Err in Applying the Firearm Enhancement.**

Geoffrey argues that the district court erred in applying the firearm enhancement under U.S.S.G. § 2D1.1(b)(1) because there was no evidence that he possessed a firearm or that his co-defendants' firearm possession was reasonably foreseeable to him. The government responds that multiple guns were found inside the houses and in the driver's seat of the car that Geoffrey drove regularly. According to the government, the informants reported that all three co-defendants kept firearms nearby during drug exchanges.

The question whether a defendant possessed a firearm within the meaning of § 2D1.1(b)(1) is a finding of fact, which we review for clear error. *George*, 872 F.3d at 1204. Section 2D1.1(b)(1) provides for a two-point enhancement "[i]f a dangerous weapon (including a firearm) is possessed." U.S.S.G. § 2D1.1(b)(1). The firearm enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* § 2D1.1cmt. n.11(A). The firearm enhancement applies "whenever a firearm is possessed during conduct relevant to the offense of conviction." *United States v. Smith*, 127 F.3d 1388, 1390 (11th Cir. 1997). Further, the enhancement may be applied to a defendant based on a co-conspirator's firearm possession if the

23

government shows by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005) (emphasis and internal quotation marks omitted).

Here, Geoffrey disputes whether possession of firearms by other members of the jointly undertaken criminal activity was reasonably foreseeable to him. A search of the River Road house produced two pistols and a twelve-gauge shotgun. Queener testified that, according to CI-1, Geoffrey was "the brains of the operation." Doc. 195 at 156. Queener also testified that Geoffrey would supply Nicholas and Holmes with crack cocaine at the River Road house. Shannon McCook, a special agent with the Georgia Bureau of Investigation, testified that Geoffrey was seen at the River Road house "if not every day, every other day." Doc. 195 at 79. On these facts, we conclude that a factfinder could permissibly conclude that possession of firearms by either Nicholas or Holmes at the River Road house was reasonably foreseeable to Geoffrey. Therefore the district court did not clearly err in applying the two-level firearm enhancement to Geoffrey.

24

**D.    The District Court Did Not Clearly Err in Assigning Geoffrey's Criminal History Points.**

Geoffrey argues that the district court clearly erred in assigning an additional two criminal history points under U.S.S.G. § 4A1.1(d) because he was released from his 12-month probation sentence in February 2015 and the instant offense did not occur until November 3, 2015.  The government responds that the district court correctly added two criminal history points because the record showed that the ongoing offense conduct occurred before the expiration of Geoffrey's prior sentence on February 5, 2015.  The government contends the record showed that CI-2 engaged in several transactions with Geoffrey before that date.  Geoffrey and the government thus agree that he was on probation until February 5, 2015; they dispute whether any conduct relevant to the offense of conviction occurred before this date.

Under U.S.S.G. § 4A1.1(d), a defendant receives two criminal history points if he committed the instant offense while serving a prior sentence, including a sentence of probation.  § 4A1.1(d).  Here, the district court did not clearly err in finding that Geoffrey was serving his prior sentence of probation when he committed the instant offense.  According to Queener, CI-2 stated that Geoffrey had been selling crack cocaine in roughly one-ounce quantities weekly throughout 2014.  As explained above, the district court permissibly considered Queener's hearsay testimony relaying CI-2's account.  Therefore, the district court did not

25

clearly err in finding that the instant offense occurred while Geoffrey was serving his prior sentence.

## IV.   CONCLUSION

We conclude that the district court did not err in calculating Geoffrey's, Nicholas's, and Holmes's base offense levels.  We further conclude that the court committed no error in applying the premises enhancement to Geoffrey and Holmes, in applying the firearm enhancement to Geoffrey, or in assigning Geoffrey two additional criminal history points on the ground that he had been serving a prior sentence while he committed conduct relevant to his offense of conviction.  We therefore affirm the sentences.

**AFFIRMED.**

26